(Slip Opinion) OCTOBER TERM, 2019 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES FOREST SERVICE ET AL. *v.* COWPASTURE RIVER PRESERVATION ASSOCIATION ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 18–1584. Argued February 24, 2020—Decided June 15, 2020*

Petitioner Atlantic Coast Pipeline, LLC (Atlantic), sought to construct an approximately 604-mile natural gas pipeline from West Virginia to North Carolina along a route that traversed 16 miles of land within the George Washington National Forest. As relevant here, Atlantic secured a special use permit from the United States Forest Service, obtaining a right-of-way for a 0.1-mile segment of pipe some 600 feet below a portion of the Appalachian National Scenic Trail (Appalachian Trail or Trail), which also crosses the National Forest. Respondents filed a petition for review in the Fourth Circuit, contending, *inter alia,* that the issuance of the special use permit for the right-of-way under the Trail violated the Mineral Leasing Act (Leasing Act). Atlantic intervened. The Fourth Circuit vacated the permit, holding that the Leasing Act did not empower the Forest Service to grant the right-of-way because the Trail became part of the National Park System when the Secretary of the Interior delegated its authority over the Trail's administration to the National Park Service, and that the Leasing Act prohibits pipeline rights-of-way through lands in the National Park System.

*Held*: Because the Department of the Interior's decision to assign responsibility over the Appalachian Trail to the National Park Service did not transform the land over which the Trail passes into land within

—————

*Together with No. 18–1587, *Atlantic Coast Pipeline, LLC* v. *Cowpasture River Preservation Association et al.*, also on certiorari to the same court.

the National Park System, the Forest Service had the authority to is-
sue the special use permit.  Pp. 3–18.

(a) These cases involve the interaction of multiple federal laws.  The
Weeks Act provided for the acquisition of lands for inclusion in the Na-
tional Forest System, stating that such lands "shall be permanently
reserved, held, and administered as national forest lands."  16 U. S. C.
§521.  The Forest Service, with authority granted by the Secretary of
Agriculture, has jurisdiction over the National Forest System, includ-
ing the George Washington National Forest.  The National Trails Sys-
tem Act (Trails Act) establishes national scenic and national historic
trails,  16  U. S. C.  §1244(a),  including  the  Appalachian  Trail,
§1244(a)(1).  It also empowers the Secretary of the Interior to establish
the Trail's location and width by entering into "rights-of-way" agree-
ments with other federal agencies, States, local governments, and pri-
vate landowners.  §§1246(a)(2), (d), (e).  The Leasing Act enables any
"appropriate agency head" to grant "[r]ights-of-way through any Fed-
eral lands . . . for pipeline purposes," 30 U. S. C. §185(a), defining "Fed-
eral lands" as "all lands owned by the United States," except (as rele-
vant) lands in the National Park System, §185(b).  The National Park
System is, in turn, defined as "any area of land and water now and
hereafter administered by the Secretary of the Interior, through the
National Park Service for park, monument, historic, parkway, recrea-
tional, or other purposes."  54 U. S. C. §100501.  Pp. 3–5.

(b) An examination of the interests and authority granted under the
Trails Act shows that the Forest Service "right-of-way" agreements
with the National Park Service for the Appalachian Trail did not con-
vert "Federal lands" under the Leasing Act into "lands" within the "Na-
tional Park System."  Pp. 5–13.

(1) A right-of-way is a type of easement.  And easements grant
only nonpossessory rights of use limited to the purposes specified in
the easement agreement: They are not land; they merely burden land
that continues to be owned by another.  The same principles that apply
to right-of-way agreements between private parties apply here, even
though the Federal Government owns all lands involved.  A right-of-
way between two agencies grants only an easement across the land,
not jurisdiction over the land itself.  Read in light of basic property law
principles, then, the plain language of the Trails Act and the agree-
ment between the two agencies did not divest the Forest Service of ju-
risdiction over the lands crossed by the Trail.  Pp. 7–10.

(2) The various duties described in the Trails Act—that the Secre-
tary of the Interior (through the National Park Service) administers
the Trail "primarily as a footpath," 16 U. S. C. §1244(a)(1); can desig-
nate Trail uses, provide Trail markers, and establish interpretative

Syllabus

and informational sites, §1246(c); and can regulate the Trail's "protection, management, development, and administration," §1246(i)—reinforce the conclusion that the agency responsible for the Trail has the limited role of administering a trail easement, but that the underlying land remains within the Forest Service's jurisdiction. Pp. 10–11.

(3) This conclusion is also reinforced by the fact that Congress spoke in terms of rights-of-way in the Trails Act rather than in terms of land transfers, as it has unequivocally and directly done in multiple other statutes when it has intended to transfer land from one agency to another. See, *e.g.,* Wild and Scenic Rivers Act, 16 U. S. C. §1281(c). Pp. 12–13.

(c) Respondents' theory—that the National Park Service administers the Trail, and therefore the lands that the Trail crosses—depends on presuming, with no clear congressional command, a vast expansion of the Park Service's jurisdiction and a significant curtailment of the Forest Service's express authority to grant pipeline rights-of-way on "lands owned by the United States." 30 U. S. C. §185(b). It also has striking implications for federalism and private property rights, especially given that Congress has used express language in other statutes when it has intended to transfer lands between agencies. Pp. 13–17.

911 F. 3d 150, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, ALITO, GORSUCH, and KAVANAUGH, JJ., joined, and in which GINSBURG, J., joined except as to Part III–B–2. SOTOMAYOR, J., filed a dissenting opinion, in which KAGAN, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 18–1584 and 18–1587

### UNITED STATES FOREST SERVICE, ET AL., PETITIONERS

18–1584                    *v.*

### COWPASTURE RIVER PRESERVATION ASSOCIATION ET AL.


### ATLANTIC COAST PIPELINE, LLC, PETITIONER

18–1587                    *v.*

### COWPASTURE RIVER PRESERVATION ASSOCIATION, ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 15, 2020]

JUSTICE THOMAS delivered the opinion of the Court.*

We granted certiorari in these consolidated cases to decide whether the United States Forest Service has authority under the Mineral Leasing Act, 30 U. S. C. §181 *et seq.*, to grant rights-of-way through lands within national forests traversed by the Appalachian Trail. 588 U. S. \_\_\_ (2019). We hold that the Mineral Leasing Act does grant the Forest Service that authority and therefore reverse the judgment of the Court of Appeals for the Fourth Circuit.

―――――――――

*JUSTICE GINSBURG joins all but Part III–B–2 of this opinion.

2    UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

Opinion of the Court

## I

## A

In 2015, petitioner Atlantic Coast Pipeline, LLC (Atlantic) filed an application with the Federal Energy Regulatory Commission to construct and operate an approximately 604-mile natural gas pipeline extending from West Virginia to North Carolina. The pipeline's proposed route traverses 16 miles of land within the George Washington National Forest. The Appalachian National Scenic Trail (Appalachian Trail or Trail) also crosses parts of the George Washington National Forest.

To construct the pipeline, Atlantic needed to obtain special use permits from the United States Forest Service for the portions of the pipeline that would pass through lands under the Forest Service's jurisdiction. In 2018, the Forest Service issued these permits and granted a right-of-way that would allow Atlantic to place a 0.1-mile segment of pipe approximately 600 feet below the Appalachian Trail in the George Washington National Forest.

## B

Respondents Cowpasture River Preservation Association, Highlanders for Responsible Development, Shenandoah Valley Battlefields Foundation, Shenandoah Valley Network, Sierra Club, Virginia Wilderness Committee, and Wild Virginia filed a petition for review in the Fourth Circuit. They contended that the issuance of the special use permit for the right-of-way under the Trail, as well as numerous other aspects of the Forest Service's regulatory process, violated the Mineral Leasing Act (Leasing Act), 41 Stat. 437, 30 U. S. C. §181 *et seq.*, the National Environmental Policy Act of 1969, 83 Stat. 852, 42 U. S. C. §4321 *et seq.*, the National Forest Management Act of 1976, 90 Stat. 2952, 16 U. S. C. §1604, and the Administrative Procedure Act, 5 U. S. C. §500 *et seq.* Atlantic intervened in the suit.

The Fourth Circuit vacated the Forest Service's special

use permit after holding that the Leasing Act did not empower the Forest Service to grant the pipeline right-of-way beneath the Trail. As relevant here, the court concluded that the Appalachian Trail had become part of the National Park System because, though originally charged with the Trail's administration, 16 U. S. C. §1244(a)(1), the Secretary of the Interior delegated that duty to the National Park Service, 34 Fed. Reg. 14337 (1969). In the Fourth Circuit's view, this delegation made the Trail part of the National Park System because the Trail was now an "area of land . . . administered by the Secretary [of the Interior] acting through the Director [of the National Park Service]." 54 U. S. C. §100501. Because it concluded the Trail was now within the National Park System, the court held that the Trail was beyond the authority of "the Secretary of the Interior or appropriate agency head" to grant pipeline rights-of-way under the Leasing Act. 30 U. S. C. §185(a). See 911 F. 3d 150, 179–181 (CA4 2018).[1]

## II

These cases involve the interaction of multiple federal laws. We therefore begin by summarizing the relevant statutory and regulatory background.

### A

Congress enacted the Weeks Act in 1911, Pub. L. 61–435, 36 Stat. 961, which provided for the acquisition of lands for inclusion in the National Forest System, see 16 U. S. C. §§516–517. The Weeks Act also directed that lands acquired for the National Forest System "shall be permanently reserved, held, and administered as national forest lands." §521. Though Congress initially granted the Secretary of Agriculture the authority to administer national forest lands, §472, the Secretary has delegated that authority

––––––––––
[1] The Fourth Circuit also ruled for respondents on their other statutory claims.

4     UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

Opinion of the Court

to the Forest Service, 36 CFR §200.3(b)(2)(i) (2019).

What is now known as the George Washington National Forest was established as a national forest in 1918, see Proclamation No. 1448, 40 Stat. 1779, and renamed the George Washington National Forest in 1932, Exec. Order No. 5867. No party here disputes that the George Washington National Forest was acquired for inclusion in the National Forest System and that it is under the jurisdiction of the Forest Service. See 16 U. S. C. §1609.

B

Enacted in 1968, the National Trails System Act (Trails Act), among other things, establishes national scenic and national historic trails. 16 U. S. C. §1244(a). See 82 Stat. 919, codified at 16 U. S. C. §1241 *et seq.* The Appalachian Trail was one of the first two trails created under the Act. §1244(a)(1).

Under the statute, the Appalachian Trail "shall be administered primarily as a footpath by the Secretary of the Interior, in consultation with the Secretary of Agriculture." *Ibid.* The statute empowers the Secretary of the Interior to establish the location and width of the Appalachian Trail by entering into "rights-of-way" agreements with other federal agencies as well as States, local governments, and private landowners. §§1246(a)(2), (d), (e). However, the Trails Act also contains a proviso stating that "[n]othing contained in this chapter shall be deemed to transfer among Federal agencies any management responsibilities established under any other law for federally administered lands which are components of the National Trails System." §1246(a)(1)(A).

The Trails Act currently establishes 30 national historic and national scenic trails. See §§1244(a)(1)–(30). It assigns responsibility for most of those trails to the Secretary of the Interior. *Ibid.* Though the Act is silent on the issue of delegation, the Department of the Interior has delegated the

administrative responsibility over each of those trails to either the National Park Service or the Bureau of Land Management, both of which are housed within the Department of the Interior. Congressional Research Service, M. De Santis & S. Johnson, The National Trails System: A Brief Overview 2–3 (Table 1), 4 (Fig. 1) (2020). Currently, the National Park Service administers 21 trails, the Bureau of Land Management administers 1 trail, and the two agencies co-administer 2 trails. *Ibid.* The Secretary of Interior delegated his authority over the Appalachian Trail to the National Park Service in 1969. 34 Fed. Reg. 14337.

C

In 1920, Congress passed the Leasing Act, which enabled the Secretary of the Interior to grant pipeline rights-of-way through "public lands, including the forest reserves," §28, 41 Stat. 449. Congress amended the Leasing Act in 1973 to provide that not only the Secretary of the Interior but also any "appropriate agency head" may grant "[r]ights-of-way through any Federal lands . . . for pipeline purposes." Pub. L. 93–153, 87 Stat. 576, codified at 30 U. S. C. §185(a). Notably, the 1973 amendment also defined "Federal lands" to include "all lands owned by the United States, except lands in the National Park System, lands held in trust for an Indian or Indian tribe, and lands on the Outer Continental Shelf." 87 Stat. 577, codified at 30 U. S. C. §185(b). In 1970, Congress defined the National Park System as "any area of land and water now and hereafter administered by the Secretary of the Interior, through the National Park Service for park, monument, historic, parkway, recreational, or other purposes." §2(b), 84 Stat. 826, codified at 54 U. S. C. §100501.

III

We are tasked with determining whether the Leasing Act enables the Forest Service to grant a subterranean pipeline

right-of-way some 600 feet under the Appalachian Trail. To do this, we first focus on the distinction between the *lands* that the Trail traverses and the Trail itself, because the lands (not the Trail) are the object of the relevant statutes.

Under the Leasing Act, the "Secretary of the Interior or appropriate agency head" may grant pipeline rights-of-way across "Federal *lands*." 30 U. S. C. §185(a) (emphasis added). The Forest Service is an "appropriate agency head" for "Federal lands" over "which [it] has jurisdiction." §185(b)(3). As stated above, it is undisputed that the Forest Service has jurisdiction over the "Federal lands" within the George Washington National Forest. The question before us, then, becomes whether these *lands* within the forest have been removed from the Forest Service's jurisdiction and placed under the Park Service's control because the Trail crosses them. If no transfer of jurisdiction has occurred, then the lands remain National Forest lands, *i.e.*, "Federal lands" subject to the grant of a pipeline right-of-way. If, on the other hand, jurisdiction over the lands has been transferred to the Park Service, then the lands fall under the Leasing Act's carve-out for "*lands* in the National Park System," thus precluding the grant of the right-of-way. §185(b)(1) (emphasis added).

We conclude that the lands that the Trail crosses remain under the Forest Service's jurisdiction and, thus, continue to be "Federal lands" under the Leasing Act.

A

We begin our analysis by examining the interests and authority granted under the Trails Act. Pursuant to the Trails Act, the Forest Service entered into "right-of-way" agreements with the National Park Service "for [the] approximately 780 miles of Appalachian Trail route within national forests," including the George Washington National Forest. 36 Fed. Reg. 2676 (1971); see also 16 U. S. C.

§1246(a)(2); 36 Fed. Reg. 19805.[2]   These "right-of-way" agreements did not convert "Federal lands" into "lands" within the "National Park System."

### 1

A right-of-way is a type of easement.  In 1968, as now, principles of property law defined a right-of-way easement as granting a nonowner a limited privilege to "use the lands of another." *Kelly* v. *Rainelle Coal Co.*, 135 W. Va. 594, 604, 64 S. E. 2d 606, 613 (1951); *Builders Supplies Co. of Goldsboro, N. C., Inc.* v. *Gainey*, 282 N. C. 261, 266, 192 S. E. 2d 449, 453 (1972); see also R. Powell & P. Rohan, Real Property §405 (1968); Restatement (First) of Property §450 (1944).  Specifically, a right-of-way grants the limited "right to pass . . . through the estate of another."  Black's Law Dictionary 1489 (4th ed. 1968).  Courts at the time of the Trails Act's enactment acknowledged that easements grant only nonpossessory rights of use limited to the purposes specified in the easement agreement.  See, *e.g.*, *Bunn* v. *Offutt*, 216 Va. 681, 684, 222 S. E. 2d 522, 525 (1976).  And because an easement does not dispossess the original owner, *Barnard* v. *Gaumer*, 146 Colo. 409, 412, 361 P. 2d 778, 780 (1961), "a possessor and an easement holder can simultaneously utilize the same parcel of land," J. Bruce & J. Ely, Law of Easements and Licenses in Land §1:1, p. 1–5 (2015).  Thus, it was, and is, elementary that the grantor of the easement retains ownership over "*the land itself.*" *Minneapolis Athletic Club* v. *Cohler*, 287 Minn. 254, 257, 177 N. W. 2d 786, 789 (1970) (emphasis added).  Stated more plainly, easements are not land, they merely burden land that continues to be owned by another.  See Bruce, Law of Easements and Licenses in Land §1:1, at 1–2.

If analyzed as a right-of-way between two private land-

---

[2] The specifics of the agreement between the two agencies is not in the record before us.

owners, determining whether any land had been trans-
ferred would be simple.  If a rancher granted a neighbor an
easement across his land for a horse trail, no one would
think that the rancher had conveyed ownership over that
land.  Nor would anyone think that the rancher had ceded
his own right to use his land in other ways, including by
running a water line underneath the trail that connects to
his house.  He could, however, make the easement grantee
responsible for administering the easement apart from the
land.  Likewise, when a company obtains a right-of-way to
lay a segment of pipeline through a private owner's land, no
one would think that the company had obtained ownership
over the land through which the pipeline passes.

Although the Federal Government owns all lands in-
volved here, the same general principles apply.  We must
ascertain whether one federal agency has transferred juris-
diction over lands—meaning "jurisdiction to exercise the in-
cidents of ownership"—to another federal agency.  Brief for
Petitioner Atlantic Coast Pipeline, LLC, 22–23, n. 2.  The
Trails Act refers to the granted interests as "rights-of-way,"
both when describing agreements with the Federal Govern-
ment and with private and state property owners.  16
U. S. C. §§1246(a)(2), (e).  When applied to a private or state
property owner, "right-of-way" would carry its ordinary
meaning of a limited right to enjoy another's land.  Nothing
in the statute suggests that the term adopts a more expan-
sive meaning when the right is granted to a federal agency,
and we do "not lightly assume that Congress silently at-
taches different meanings to the same term in the same . . .
statute," *Azar* v. *Allina Health Services*, 587 U. S. ___, ___–
___ (2019) (slip op., at 7–8).  Accordingly, as would be the
case with private or state property owners, a right-of-way
between two agencies grants only an easement across the

land, not jurisdiction over the land itself.[3]

The dissent notes that the Federal Government has referred to the Trail as an "area" and a "unit" and has described the Trail in terms of "acres." See *post*, at 7–10, 13 (opinion of SOTOMAYOR, J.). In the dissent's view, this indicates that the Trail and the land are the same. This is not so. Like other right-of-way easements, the Trail burdens "a particular parcel of land." Bruce, Law of Easements and Licenses in Land §1:1, at 1–6. It is thus not surprising that the Government might refer to the Trail as an "area," much as one might mark out on his property the "area" of land burdened by a sewage easement. The fact remains that the land and the easement are still separate.

The dissent also cites provisions of the Trails Act that discuss "lands" to be included in the Trail. See *post*, at 12. But this, too, is consistent with our conclusion that the Trail is an easement. Like all easements, the parcel of land burdened by the easement has particular metes and bounds. See, *e.g.*, *Carnemella* v. *Sadowy*, 147 App. Div. 2d 874, 876, 538 N. Y. S. 2d 96, 98 (1989) ("[T]he subject easement . . . reasonably described the portion of the property where the easement existed"); *Sorrell* v. *Tennessee Gas Transmission Co.*, 314 S. W. 2d 193, 195–196 (Ky. 1958). In fact, without such descriptions, parties to an easement agreement would be unable to understand their rights or enforce another party's obligations under the easement agreement. Thus, there is nothing noteworthy about the fact that the Trails Act discusses whether particular lands should be included

———————

[3] It is of no moment that the Trails Act also permits the agency responsible for the Trail to grant "rights-of-way upon, over, under, across, or along any component of the national trails system." 16 U. S. C. §1248(a). See *post*, at 13 (SOTOMAYOR, J., dissenting). This provision merely extends a positive grant of authority to the agency responsible for the Trail; it does not divest the original agency of that same authority. See J. Bruce & J. Ely, The Law of Easements and Licenses in Land §1:1, p. 1–5 (2015) (noting that "a possessor and an easement holder can simultaneously utilize the same parcel of land").

within the metes and bounds of the tracts of land burdened by the easement.  In short, none of the characterizations identified by the dissent changes the fact that the burden on the land and the land itself remain separate.[4]

In sum, read in light of basic property law principles, the plain language of the Trails Act and the agreement between the two agencies did not divest the Forest Service of jurisdiction over the lands that the Trail crosses.  It gave the Department of the Interior (and by delegation the National Park Service) an easement for the specified and limited purpose of establishing and administering a Trail, but the land itself remained under the jurisdiction of the Forest Service.  To restate this conclusion in the parlance of the Leasing Act, the lands that the Trail crosses are still "Federal lands," 30 U. S. C. §185(a), and the Forest Service may grant a pipeline right-of-way through them—just as it granted a right-of-way for the Trail.  Sometimes a complicated regulatory scheme may cause us to miss the forest for the trees, but at bottom, these cases boil down to a simple proposition: A trail is a trail, and land is land.

2

The various duties described in the Trails Act reinforce

_____

[4] The dissent suggests that we are not engaging in statutory interpretation and that, relatedly, we should not look to state law for our analysis.  See *post*, at 8, n. 8, 12, n. 9.  Neither criticism is warranted.  We are principally concerned with the meaning of the term "right-of-way," which, as the dissent's own authority acknowledges, carries the same meaning whether it appears in federal or state law.  In *New Mexico* v. *United States Trust Co.*, 172 U. S. 171 (1898), for instance, the Court interpreted the term in a federal statute.  There, the Court acknowledged that there is a difference between "'an easement in land [and] the land itself'" and that a "right of way . . . constitute[s] no . . . right of possession of the land itself."  *Id.*, at 182, 184.  We have more recently confirmed that it is appropriate to look to "basic common law principles" when interpreting the terms right-of-way and easement.  See *Marvin M. Brandt Revocable Trust* v. *United States*, 572 U. S. 93, 106 (2014); *id.*, at 105, n. 4.

that the agency responsible for the Trail has a limited role of administering a trail easement, but that the underlying land remains within the jurisdiction of the Forest Service. The Trails Act states that the Secretary of the Interior (and by delegation the National Park Service) shall "administe[r]" the Trail "primarily as a footpath." 16 U. S. C. §1244(a)(1). The Secretary is charged with designating Trail uses, providing Trail markers, and establishing interpretative and informational sites "to present information to the public about the [T]rail." §1246(c). He also has the authority to pass regulations governing Trail protection and good conduct and can regulate the "protection, management, development, and administration" of the Trail. §1246(i). Though the Trails Act states that the responsible agency shall "*provide* for" the maintenance of the Trail, §1246(h)(1) (emphasis added), it is the Forest Service that *performs* the necessary physical work. As the Government explained at oral argument (and as respondents did not dispute), "[i]f a tree falls on forest lands over the trail, it's the Forest Service that's responsible for it. You don't call the nine [National] Park Service employees at Harpers Ferry [in West Virginia] and ask them to come out and fix the tree." Tr. of Oral Arg. 5. These statutory duties refer to the Trail easement, not the lands over which the easement passes.

The dissent resists this conclusion by asserting that the National Park Service "administers" the Trail, and that so long as that is true, the Trail is land within the National Park System. See *post*, at 15–16. But the National Park Service does not administer the "land" crossed by the Trail. It administers the *Trail* as an easement—an easement that is separate from the underlying land.[5]

_____

[5] The dissent argues that its position is supported by the fact that the terms "administer" and "manage" are "terms of art." *Post*, at 15. The dissent, however, does not demonstrate that either term carries a "widely

12    UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

Opinion of the Court

3

Finally, Congress has used unequivocal and direct language in multiple statutes when it wished to transfer land from one agency to another, just as one would expect if a property owner conveyed land in fee simple to another private property owner. In the Wild and Scenic Rivers Act, for instance, which was enacted the same day as the Trails Act, Congress specified that "[a]ny component of the national wild and scenic rivers system that is administered by the Secretary of the Interior through the National Park Service *shall become a part of the [N]ational [P]ark [S]ystem*." §10(c), 82 Stat. 916, codified at 16 U. S. C. §1281(c) (emphasis added). That statute also explicitly permits the head of an agency "to transfer to the appropriate secretary *jurisdiction over such lands*." §6(e), 82 Stat. 912–913, codified at 16 U. S. C. §1277(e) (emphasis added). Congress has also authorized the Department of the Interior "to transfer to the jurisdiction of the Secretary of Agriculture for national forest purposes *lands* or *interests in lands* acquired for or in connection with the Blue Ridge Parkway" and specifies that "[l]ands transferred under this Act shall become national forest lands." Pub. L. 82–336, 66 Stat. 69 (emphasis added). Similar language appears in a host of other statutes. See §§5(a)(2), 8(c)(2), 114 Stat. 2529, 2533; Pub. L. 89–446, 80 Stat. 199; §7(c), 79 Stat. 217; Pub. L. 88–415, 78 Stat. 388. The fact that Congress chose to speak in terms of rights-of-way in the Trails Act, rather than in terms of land transfers, reinforces the conclusion that the Park Service has a limited role over only the Trail, not the lands that the Trail crosses. See *Reves* v. *Ernst & Young*, 507 U. S. 170, 178–179 (1993).

———————

accepted meaning," *FCC* v. *AT&T Inc.*, 562 U. S. 397, 405 (2011) (internal quotation marks omitted), let alone that Congress "borrow[ed] terms of art in which are accumulated the legal tradition and meaning of centuries of practice," *Carter* v. *United States*, 530 U. S. 255, 264 (2000) (internal quotation marks omitted; emphasis deleted).

For these reasons, we hold that the Trails Act did not transfer jurisdiction of the lands crossed by the Trail from the Forest Service to the Department of the Interior. It created a trail easement and gave the Department of the Interior the administrative responsibilities concomitant with administering the Trail as a trail. Accordingly, because the Department of the Interior had no jurisdiction over any lands, its delegation to the National Park Service did not convert the Trail into "*lands* in the National Park System," 30 U. S. C. §185(b)(1) (emphasis added)—*i.e.*, an *"area of land . . .* administered by the Secretary [of the Interior] acting through the Director [of the National Park Service]." 54 U. S. C. §100501 (emphasis added). The Forest Service therefore retained the authority to grant Atlantic a pipeline right-of-way.

## B

### 1

Respondents take a markedly different view, which is shared by the dissent. According to respondents, the Trail cannot be separated from the underlying land. In their view, if the National Park Service administers the Trail, then it also administers the lands that the Trail crosses, and no pipeline rights-of-way may be granted.

Respondents' argument that the National Park Service administers the Trail (and therefore the lands that the Trail crosses) proceeds in four steps. First, the Trails Act granted the Department of the Interior the authority to administer the Trail. 16 U. S. C. §1244(a)(1). Second, the Department of the Interior delegated those responsibilities to the National Park Service in 1969. 34 Fed. Reg. 14337. Third, in 1970, Congress defined the National Park System to include "any area of land and water administered by the Secretary [of the Interior] acting through the Director [of the National Park Service]." 54 U. S. C. §100501. Under

respondents' view, the 1970 National Park System defini-
tion made the Trail part of the National Park System.  But
one more step was still required to place the Trail outside
the Forest Service's Leasing Act pipeline authority.  That
final step occurred in 1973, when the amendment to the
Leasing Act carved out lands in the National Park System
from the definition of the "Federal lands" through which
pipeline rights-of-way could be granted.    30 U. S. C.
§185(b)(1).  Because the Trail had become part of the Na-
tional Park Service in 1970, respondents conclude that the
1973 carve-out applied to the Trail.  Therefore, in their
view, the Forest Service cannot grant pipeline rights-of-way
under the parcels on which there is a right-of-way for the
Appalachian Trail.

This circuitous path misses the mark.  As described
above, under the plain language of the Trails Act and basic
property principles, responsibility for the Trail and jurisdic-
tion over the lands that the Trail crosses can and must be
separated for purposes of determining whether the Forest
Service can grant a right-of-way.  See *supra*, at 6–10.

2

Even accepting respondents' argument on its own terms,
however, we remain unpersuaded.  Respondents' entire the-
ory depends on an administrative action about which the
statutes at issue are completely silent: the Department of
the Interior's voluntary decision to assign responsibility
over a given trail to the National Park Service rather than
to the Bureau of Land Management.  To reiterate, respond-
ents contend that the Department of the Interior's decision
to delegate responsibility over a trail to the National Park
Service renders that trail an "area of land . . . administered
by the Secretary [of the Interior], acting through the [Park
Service.]"    54 U. S. C. §100501.  Respondents' theory re-
quires us to accept that, without a word from Congress, the
Department of the Interior has the power to vastly expand

the scope of the National Park Service's jurisdiction through its delegation choices. See Addendum to Reply Brief for Petitioner Atlantic Coast Pipeline, LLC, 1a–2a. After all, respondents' view would not just apply to the approximately 2,000-mile-long Appalachian Trail. It would apply equally to all 21 national historic and national scenic trails currently administered by the National Park Service. See Congressional Research Service, National Trails System. Under our precedents, when Congress wishes to "'alter the fundamental details of a regulatory scheme,'" as respondents contend it did here through delegation, we would expect it to speak with the requisite clarity to place that intent beyond dispute. See *Epic Systems Corp.* v. *Lewis*, 584 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 15) (quoting *Whitman* v. *American Trucking Assns.*, *Inc.*, 531 U. S. 457, 468 (2001)). We will not presume that the act of delegation, rather than clear congressional command, worked this vast expansion of the Park Service's jurisdiction and significant curtailment of the Forest Service's express authority to grant pipeline rights-of-way on "lands owned by the United States." 30 U. S. C. §185(b).

Respondents' theory also has striking implications for federalism and private property rights. Respondents do not contest that, in addition to federal lands, these 21 trails cross lands owned by States, local governments, and private landowners. See also *post*, at 21 (acknowledging that the Trail alone "comprises 58,110.94 acres of Non-Federal land, including 8,815.98 acres of Private land" (internal quotation marks omitted)). Under respondents' view, these privately owned and state-owned lands would also become lands in the National Park System.[6] Our precedents require Congress to enact exceedingly clear language if it

---

[6] The dissent contends that this concern is misplaced because, under its view, though the National Park Service will be administering the thousands of miles of land that the 21 trails cross, the Federal Government will not have ownership over it. See *post*, at 19–20. As explained

16    UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

Opinion of the Court

wishes to significantly alter the balance between federal
and state power and the power of the Government over pri-
vate property.  Cf. *Gregory* v. *Ashcroft,* 501 U. S. 452, 460
(1991).

Finally, reliance on the Department of the Interior's del-
egation of its Trails Act authority is especially questionable
here, given that Congress has used express language in
other statutes when it wished to transfer lands between

––––––––––

*supra,* at 6–10, this argument suffers from the same flaw—namely, that
the Trail easement and the land that the Trail crosses are one and the
same.  Moreover, under the dissent's view, the National Park Service
would still gain power over numerous tracts of privately owned and
state-owned land.  The dissent cites no authority to explain why this as-
sertion of "administrative" jurisdiction would not pose many of the same
difficulties as outright ownership.  For instance, the National Park Ser-
vice provides for the maintenance of the Trail where it crosses federal
lands.  16 U. S. C. §1246(h)(1).  Over half of the States through which the
Trail passes have analogous laws for state-owned lands.  See, *e.g.*, N. C.
Gen. Stat. Ann. §143B–135.76 (2019); Tenn. Code Ann. §§11–11–106,
11–11–117 (2012); Va. Code Ann. §10.1–203 (2018); Md. Nat. Res. Code
Ann. §5–1001 (2018); 64 Pa. Cons. Stat. §803(b) (2010); N. J. Stat. Ann.
§13:8–39 (West 2003); Mass. Gen. Laws, ch. 132A, §12 (2018); Conn. Gen.
Stat. §§23–69, 23–70 (2017); N. H. Rev. Stat. Ann. §216–D:2 (2019); Me.
Rev. Stat. Ann., Tit. 12, §1892 (2020 Cum. Supp.).  The dissent's view
would allow the Federal Government to displace all such laws.  Attempt-
ing to downplay the implications of its position, the dissent asserts that
the National Park Service already has such jurisdiction under the Trails
Act and its implementing regulations.  See *post,* at 19, n. 13.  This, too,
is incorrect.  Recognizing the fact that "[National Park Service] lands are
intermingled with private, local, [and] state" lands, 67 Fed. Reg. 8479
(2002), the National Park Service has concluded that the regulations gov-
erning the Trail pointed to by the dissent "do not apply on non-federally
owned lands," 36 CFR 1.2(b) (2019); see also 48 Fed. Reg. 30253 (1983);
Dept. of Interior, W. Janssen, Appalachian National Scenic Trail, Super-
intendent's Compendium of Designations, Closures, Permit Require-
ments and Other Restrictions Imposed Under Discretionary Authority
§5, p. 3 (2019) ("The rules contained in this Compendium apply to all
persons entering, using, visiting or otherwise present on federally owned
lands").  Thus, the dissent points to nothing indicating that the National
Park Service has ever adopted its novel theory, with its attendant feder-
alism concerns.

agencies. See *supra*, at 12. Congress not only failed to enact similar language in the Trails Act, but it clearly expressed the opposite view. The entire Trails Act must be read against the backdrop of the Weeks Act, which states that lands acquired for the National Forest System—including the George Washington National Forest—"shall be permanently reserved, held, and administered as national forest lands." 16 U. S. C. §521. The Trails Act further provides that "[n]othing contained in this chapter shall be deemed to transfer among Federal agencies any management responsibilities established under any other law for federally administered lands which are components of the National Trails System." §1246(a)(1)(A). These two provisions, when combined with the Trails Act's use of the term "rights-of-way" and the administrative duties set out in the Trails Act, provide much clearer—and more textual—guides to Congress' intent than an agency's silent decision to delegate responsibilities to the National Park Service.

In sum, we conclude that the Department of the Interior's unexplained decision to assign responsibility over certain trails to the National Parks System and the Leasing Act's definition of federal lands simply cannot bear the weight of respondents' interpretation.

## IV

We hold that the Department of the Interior's decision to assign responsibility over the Appalachian Trail to the National Park Service did not transform the land over which the Trail passes into land within the National Park System. Accordingly, the Forest Service had the authority to issue the permit here.[7]

_____

[7] Objections that a pipeline segment interferes with rights of use enjoyed by the National Park Service would present a different issue. See Bruce, Law of Easements and Licenses in Land §1:1. These cases do not present anything resembling such a scenario. Under the current proposal, the workstations for laying the challenged segment of the pipeline

For the foregoing reasons, we reverse the judgment of the
Court of Appeals and remand the cases for further proceed-
ings consistent with this opinion.

*It is so ordered.*

––––––––––

will be located on private land, approximately 1,400 feet and 3,400 feet
respectively from the Trail.  Atlantic plans to use a method of drilling
that will not require the company to clear any land or dig on the Trail's
surface.  The entry and exit sites will not be visible from the Trail, nor
will any detour be required.  And, the final pipeline will lie approxi-
mately 600 feet below the Trail.

# SUPREME COURT OF THE UNITED STATES

---

Nos. 18–1584 and 18–1587

---

UNITED STATES FOREST SERVICE, ET AL.,
PETITIONERS
18–1584                 *v.*
COWPASTURE RIVER PRESERVATION
ASSOCIATION ET AL.

ATLANTIC COAST PIPELINE, LLC,
PETITIONER
18–1587                 *v.*
COWPASTURE RIVER PRESERVATION
ASSOCIATION, ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[June 15, 2020]

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN joins,
dissenting.

The majority's complicated discussion of private-law easements, footpath maintenance, differently worded statutes, and policy masks the simple (and only) dispute here. Is the Appalachian National Scenic Trail "lan[d] in the National Park System"? 30 U. S. C. §185(b)(1). If it is, then the Forest Service may not grant a natural-gas pipeline right-of-way that crosses the Trail on federally owned land. So says the Mineral Leasing Act, and the parties do not disagree. See Brief for Petitioner Atlantic Coast Pipeline, LLC, 10; Brief for Federal Petitioners 3; Brief for Respondents 1.

By definition, lands in the National Park System include "any area of land" "administered" by the Park Service for

2    UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

SOTOMAYOR, J., dissenting

"park, monument, historic, parkway, recreational, or other
purposes." 54 U. S. C. §100501. So says the National Park
Service Organic Act, and the parties agree. See Brief for
Petitioner Atlantic Coast Pipeline, LLC, 38; Brief for Fed-
eral Petitioners 45–46; Brief for Respondents 5–6.

The Appalachian Trail, in turn, is "administered" by the
Park Service to ensure "outdoor recreation" and to conserve
"nationally significant scenic, historic, natural, or cultural
qualities." §§3(b), 5(a)(1), 82 Stat. 919–920; see also 34 Fed.
Reg. 14337 (1969). So say the National Trails System Act
and relevant regulations, and again the parties agree. See
Brief for Petitioner Atlantic Coast Pipeline, LLC, 6, 8–9;
Brief for Federal Petitioners 9, 26; Brief for Respondents 5.

Thus, as the Government puts it, the only question here
is whether parts of the Appalachian Trail are "'lands'"
within the meaning of those statutes. Brief for Federal Pe-
titioners 3. Those laws, a half century of agency under-
standing, and common sense confirm that the Trail is land,
land on which generations of people have walked. Indeed,
for 50 years the "Federal Government has referred to the
Trail" as a "'unit'" of the National Park System. *Ante*, at 9;
see Part I–C, *infra*. A "unit" of the Park System is by defi-
nition either "land" or "water" in the Park System. 54
U. S. C. §§100102(6), 100501. Federal law does not distin-
guish "land" from the Trail any more than it distinguishes
"land" from the many monuments, historic buildings, park-
ways, and recreational areas that are also units of the Park
System. Because the Trail is land in the Park System, "no
federal agency" has "authority under the Mineral Leasing
Act to grant a pipeline right-of-way across such lands."
Brief for Federal Petitioners 3.

By contrast, today's Court suggests that the Trail is not
"land" in the Park System at all. The Court strives to sep-
arate "the *lands* that the Trail traverses" from "the Trail
itself," reasoning that the Trail is simply an "easement,"
"not land." *Ante*, at 6, 7. In doing so, however, the Court

relies on anything except the provisions that actually answer the question presented. Because today's Court condones the placement of a pipeline that subverts the plain text of the statutes governing the Appalachian Trail, I respectfully dissent.

I

Petitioner Atlantic Coast Pipeline, LLC, seeks to construct a natural-gas pipeline across the George Washington National Forest. The proposed route traverses 21 miles of national forests and requires crossing 57 rivers, streams, and lakes within those forests. See 911 F. 3d 150, 155 (CA4 2018) (case below in No. 18–1584); App. in No. 18–1144 (CA4), p. 1659. The plan calls for "clearing trees and other vegetation from a 125–foot right of way (reduced to 75 feet in wetlands) through the national forests, digging a trench to bury the pipeline, and blasting and flattening ridgelines in mountainous terrains." 911 F. 3d, at 155. Construction noise will affect Appalachian Trail use 24 hours a day. See App. 79–80. Atlantic's machinery (including the artificial lights required to work all night) will dim the stars visible from the Trail. See *id.*, at 80. As relevant here, at one stretch the pipeline would cross the Trail.[1]

A

Three interlocking statutes foreclose this proposal. The Mineral Leasing Act authorizes the Secretary of the Interior "or appropriate agency head" to grant rights-of-way for natural-gas pipelines "through any Federal lands." 30 U. S. C. §185(a); see also §185(q) (governing renewals of

---

[1] The Court of Appeals for the Fourth Circuit also found that Atlantic's proposal may conflict with several environmental laws, including the National Forest Management Act and the National Environmental Policy Act. See 911 F. 3d, at 154–155, 160–179 (remanding for further agency review). Those aspects of the Fourth Circuit's decision are not before this Court.

pre-existing pipeline rights-of-way "across Federal lands").[2] "For the purposes of" §185, however, "'Federal lands'" exclude "lands in the National Park System." §185(b). Thus, as all acknowledge, if a proposed pipeline would cross any land in the Park System, then no federal agency would have "authority under the Mineral Leasing Act to grant" a "right-of-way across" that land. Brief for Federal Petitioners 3; see also Brief for Petitioner Atlantic Coast Pipeline, LLC, 10; Brief for Respondents 1.[3]

Although the Mineral Leasing Act does not define "lands in the National Park System," the Park Service Organic Act does. Under the Organic Act, the Park System and any "unit" of the Park System "include any area of land and water administered by the Secretary" of the Interior, "acting through the Director" of the Park Service, for "park, monument, historic, parkway, recreational, or other purposes." 54 U. S. C. §§100102, 100501. That definition is sweeping; whether land or water, "any area" so "administered" by the Park Service is in the Park System. §100501.[4]

———————
[2] If the "surface" of "all of the Federal lands involved" is "under the jurisdiction of one Federal agency," then the head of that agency (rather than the Secretary of the Interior) has authority to grant the right-of-way across federal land. 30 U. S. C. §185(c)(1). If, by contrast, the surface of that land "is administered by the Secretary [of the Interior] or by two or more Federal agencies," then only the Secretary may grant the right-of-way. §185(c)(2).

[3] Although the Mineral Leasing Act's right-of-way authority excludes lands in the Park System, Congress may enact separate legislation permitting natural-gas pipelines across such lands. See, *e.g.*, §1(a), 126 Stat. 2441 (providing that "[t]he Secretary of the Interior may issue right-of-way permits" for certain natural-gas pipelines across Glacier National Park). Here, however, Atlantic and the Government have identified no other permitting authority besides the Mineral Leasing Act.

[4] The legal meaning of "land" when Congress enacted the relevant statutes was "any ground, soil, or earth whatsoever." Black's Law Dictionary 1019 (4th ed. 1968). The ordinary meaning of land was much the same. Webster's New International Dictionary 1388 (2d ed. 1949) ("The solid

In turn, the National Trails System Act of 1968 (Trails Act), 82 Stat. 919, provides that the Appalachian Trail "shall be administered" "by the Secretary of the Interior" to "provide for maximum outdoor recreation potential and for the conservation and enjoyment" of "nationally significant scenic, historic, natural, or cultural qualities." §§3(b), 5(a)(1), *id.*, at 919–920; see also 16 U. S. C. §§1242(a)(2), 1244(a)(1). The Trails Act provides that the Secretary of the Interior has authority to "grant easements and rights-of-way," among other things, "under" the Appalachian Trail's surface. §9(a), 82 Stat. 925; see also 16 U. S. C. §1248(a).[5] In 1969, the Secretary of the Interior assigned all these powers to the Park Service, naming it the Trail's "land administering bureau." 34 Fed. Reg. 14337. Since then, the Federal Government has consistently identified the Trail as a "'unit'" of, and thus land in, the National Park System. 54 U. S. C. §§100102(6), 100501; see also, *e.g.*, *ante*, at 9; Part I–C, *infra*.

By statutory definition, the Appalachian Trail is land in the National Park System, and the Mineral Leasing Act does not permit pipeline rights-of-way across it.

B

Statutory history reinforces that the Appalachian Trail is land in the National Park System. When the Trails Act designated the Appalachian Trail in 1968, then-existing law provided that "all federally owned or controlled lands" administered by the Park Service for certain purposes were within the Park System. §2(a), 67 Stat. 496. At the time, though, many "lands" owned by the Federal Government

---

part of the surface of the earth, as distinguished from water"; "Any ground, soil, or earth whatsoever . . . and everything annexed to it, whether by nature . . . or by man").

[5] It is undisputed that 16 U. S. C. §1248 does not authorize rights-of-way for natural-gas pipelines. Atlantic therefore does not rely on this provision.

6      UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

SOTOMAYOR, J., dissenting

were "supervis[ed]" by the Park Service "pursuant to cooperative agreement[s]" but technically "under the administrative jurisdiction" of other federal agencies. §2(b), *ibid.* The law defined these as "'miscellaneous areas'" outside of the Park System. *Ibid.*

In 1970, after the Park Service had begun its role as the Trail's land-administering bureau, Congress enacted the General Authorities Act. This Act declared that the Park System had "grown to include superlative natural, historic, and recreation areas in every major region" and Territory of the United States, and that the Act's "purpose" was "to include all such areas in the [Park] System and to clarify the authorities applicable to the system." Pub. L. 91–383, §1, 84 Stat. 825. To that end, Congress eliminated the "'miscellaneous areas'" classification, see §2(a), *id.*, at 826, and amended the Park Service Organic Statute to define the National Park System as "'any area of land and water now or hereafter administered by the Secretary of the Interior through the National Park Service.'" §2(b), *ibid.*; see also 54 U. S. C. §§100102(2), (5), (6), 100501. Of course, the Appalachian Trail was then (and "'[t]hereafter'") "'administered by the Secretary of the Interior through the National Park Service.'" §2(b), 84 Stat. 826.

In 1973, having broadly defined lands in the Park System, Congress amended the Mineral Leasing Act by eliminating authority to grant rights-of-way across those lands. Before then, the Mineral Leasing Act had provided limited permission to grant rights-of-way through "public lands," §28, 41 Stat. 449, a term of art referring to certain federally owned land that had never been owned by a State or private individual, see *Wallis* v. *Pan American Petroleum Corp.*, 384 U. S. 63, 65, and n. 2 (1966). The 1973 amendments replaced the Mineral Leasing Act's reference to "public lands" with "'all lands owned by the United States'" and carved out "'lands in the National Park System.'" §101, 87 Stat. 577; see also 30 U. S. C. §185(b). This carve-out meant

that parties seeking to build natural-gas pipelines across federally owned land in the Park System could not rely on the Mineral Leasing Act. §101, 87 Stat. 577; 30 U. S. C. §185(b).[6]

Put simply, "any area of land and water administered by" the Park Service is a unit of the Park System and must be "regulate[d]" through "means and measures" that "conserve" and "provide for the enjoyment of the scenery, natural and historic objects, and wild life" in ways "as will leave them unimpaired for the enjoyment of future generations." 54 U. S. C. §§100101, 100501. By 1970, the Appalachian Trail was no doubt such an area, as Congress knew when it excluded all federally owned land "in the National Park System" from the Mineral Leasing Act in 1973.[7] Because the proposed pipeline here would cross that park land, Atlantic cannot rely on the Mineral Leasing Act to authorize its proposal.

## C

Agency practice confirms this conclusion. For a half century the Park Service has acknowledged that the Appala-

———————

[6] Congress reiterated that the Trail is land in the Park System in 1983. It amended the Trails Act to provide that that the Secretary of Interior's "'administrative responsibilities'" over the Appalachian Trail would be "'carr[ied] out'" by "'utiliz[ing] authorities related to units of the national park system.'" §207(h), 97 Stat. 47; see also 16 U. S. C. §1246(i).

[7] See §2(b), 84 Stat. 826 (General Authorities Act); H. R. Rep. No. 91–1265, p. 2 (1970) ("The national park system which we know and cherish today has grown and matured over the years [and] has broadened to include . . . areas primarily significant for their outdoor recreation potential"); *ibid.* (explaining that amendments to the Park Service Organic Act "reference . . . more recent concepts like national recreation areas" as "units of the national park system"); see also §101, 87 Stat. 576–577 (Mineral Leasing Act); S. Rep. No. 93–207, p. 29 (1973) (explaining that the Mineral Leasing Act "is not intended to grant rights-of-way through the National Park System" and citing the recently revised Park Service Organic Act).

chian Trail is a unit of (and land in) the Park System.  Recall that a year after the Trails Act's enactment, the Secretary of Interior named the Park Service the "land administering bureau" for the Appalachian Trail.  34 Fed. Reg. 14337.  In 1972, the Park Service identified the Trail as a "recreational are[a]" that it "administered."  National Park Service (NPS), National Parks & Landmarks 88 (capitalization deleted).  Similarly, as the administrator of that land, the Park Service issued regulations for the Trail under the umbrella, "Areas of the National Park System."  36 CFR pt. 7 (1983) (capitalization deleted); see also *id.*, §7.100; 48 Fed. Reg. 30252 (1983).  When it did so, the Park Service explained that "[t]hese regulations will be utilized to fulfill the statutory purposes of units of the National Park System."  36 CFR §1.1; 48 Fed. Reg. 30275.  All those terms—land, area, administer, recreation, unit of the National Park System—trace the Organic Act's definition of land in the Park System.  See, *e.g.*, 54 U. S. C. §§100102(6), 100501.[8]

More recently, a 2005 Park Service history stated that the Appalachian Trail was "brought into the National Park System" by the Trails Act and that, with the Trail's "inclusion in the System, the [Park Service] became responsible for its protection and maintenance within federally administered areas."  NPS, The National Parks: Shaping the System 77.  A 2006 Park Service handbook stated that "[s]everal components of the National Trails System which are administered by the [Park] Service," including the Ap-

---

[8] The Court acknowledges that "the Government might refer to the Trail" as "'area' of land,'" but concludes that those references must pertain only to easements as defined by state law.  *Ante*, at 9 (analogizing to sewage easements and citing state law).  That view strays far from the federal statutes at issue.  The simpler conclusion is that when the Government uses terms that define land in the Park System, the Government refers to land in the Park System.

palachian Trail, "have been designated as units of the na-
tional park system" and "are therefore managed as national
park areas." NPS, Management Policies 2006, §9.2.2.7,
p. 134. A 2016 Park Service index similarly listed the Trail
as "a unit of the National Park System." NPS, The National
Parks: Index 2012–2016, p. 142 (NPS Index).

Still taking cues from statutory text, the Park Service
continues to refer to the Appalachian Trail as land in the
Park System. Just last year, the Park Service issued a ref-
erence manual describing the Appalachian Trail as a "land
protection project" that has "been formally declared [a]
uni[t] of the National Park System." NPS, National Trails
System: Reference Manual 45, pp. 28, 221 (2019) (NPS, Ref-
erence Manual). The Park Service's compendium of regu-
lations similarly explains that the General Authorities Act
"brought all areas administered by the [Park Service] into
one National Park System." NPS, Appalachian Trail Su-
perintendent's Compendium 2 (2019). Even the Park Ser-
vice's recent budget justification to Congress identified
the Appalachian Trail as a "Park Base Uni[t]," a "Park
Uni[t]," and a national "par[k]." Dept. of Interior, Budget
Justifications and Performance Information—Fiscal Year
2020: National Park Service, at Overview–16, ONPS–89,
–105 (Budget Justifications) (capitalization deleted).

The Government has even brought this understanding to
bear against private citizens. For example, the Govern-
ment (including the Park Service and the Forest Service)
filed a damages lawsuit against an individual, invoking the
Organic Act and asserting that a segment of the Appala-
chian Trail passing through Forest Service lands was a unit
of the National Park System. See Record in *United States*
v. *Reed*, No. 1:05–cv–00010 (WD Va.), Doc. 1, p. 2 ("The
United States . . . has established the Appalachian Na-
tional Scenic Trail . . . as [a] uni[t] of the National Park Ser-
vice"). In that case, the Government obtained a jury verdict
against someone who had caused a fire on a Trail segment

10      UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

SOTOMAYOR, J., dissenting

that was, as the Government alleged, land in the Park System. See *ibid.*, see also *id.*, Doc. 31 (judgment).

Here, at least before they reached this Court, both the Park Service and Forest Service explained in proceedings below that the Trail is land in the Park System. The Park Service noted that the Appalachian Trail is a "protected corridor (a swath of land averaging about 1,000 feet in width . . . )" that the Park Service "administers." App. 97. Thus, the Park Service detailed, "the entire Trail corridor" is a "park unit." *Ibid.* For its part, the Forest Service acknowledged that the Park Service "is the lead federal administrator agency for the entire [Appalachian Trail], regardless of land ownership." *Id.*, at 126. Again, this statement echoes the Organic Act's definition of land in the Park System, see 54 U. S. C. §100501, further reflecting that the Trail is land in the Park System.

The agencies' common ground does not stop there. The Park Service's Land Resources Division estimates that the Appalachian Trail corridor constitutes nearly 240,000 acres. NPS, Land Resources Div., Acreage Reports, Listing of Acreage, p. 1 (Dec. 31, 2019) (NPS, 2019 Acreage Report). The Forest Service concurs. See Dept. of Agriculture, Revised Land and Resource Mgmt. Plan–George Washington Nat. Forest 4–42 (2014) (Forest Service Land Plan). In its own management plan, the Forest Service explained that the Secretary of the Interior "administer[s]" in the George Washington National Forest "about 9,000 acres." *Ibid.* Acres of land, that is.

As federally owned land administered by the Park Service, the Trail segment that Atlantic aims to cross is exempt from the Mineral Leasing Act's grant of right-of-way authority.

II

The Court resists this conclusion for three principal reasons. Each tries to detach the Appalachian Trail from land,

but none adheres to the plain text and history described above.

## A

First, the Court posits that the Forest Service granted the Park Service only an "easement" for the Trail's route through the George Washington National Forest. See *ante*, at 7–10. Because private-law "easements are not land," the Court reasons, nothing "divest[ed] the Forest Service of jurisdiction over the lands that the Trail crosses." *Ante*, at 7, 10.

That reasoning is self-defeating. Despite recognizing that the Park Service "administers the *Trail*," the Court insists that this administration excludes "the underlying land" constituting the Trail. *Ante*, at 11. But the Court does not disclose how the Park Service could administer the Trail without administering the land that forms it.

Neither does the Court explain how the Trail could be a unit of the Park System if it is not land. The Court declares that the Trail's status as a System "'unit'" does not "indicat[e] that the Trail and the land are the same." *Ante*, at 9. But the Court cites no statutory authority for this view. Nor could it. The Organic Act says the opposite: A "'System unit'" is by definition "land" or "water." 54 U. S. C. §§100102(6), 100501. Unless the Court means to imply that the Appalachian Trail is water, the Trail must be land in the Park System. Indeed, the Court's atextual reading unsettles much of the Park System as we know it. Other System units include the Booker T. Washington National Monument, George Washington's birthplace, the Harriet Tubman Underground Railroad National Historical Park, the Blue Ridge Parkway, and the Golden Gate National Recreation Area. See, *e.g.*, Budget Justifications, ONPS–89, –92, –109; accord, NPS Index, at 32, 61, 85, 104, 105. These monuments, houses, roads, and recreational areas are just as much "land" in the Park System as is a foot trail worn into the earth.

The Court's analysis of private-law easements is also un-convincing.  In the Court's words, a private-law easement is "a limited privilege" granted to "a nonowner" of land. *Ante*, at 7; see also *ibid.* (adding that "the grantor of [an] easement retains ownership" over the land and that "easements are not land, they merely burden land that continues to be owned by another").  But as the Court recognizes, "the Federal Government owns all lands involved here," *ante*, at 8, so private law is inapposite.  Precisely because the Government owns all the lands at issue, it makes little sense to ask whether the Government granted itself an easement over its own land under state-law principles.  Between agencies of the Federal Government, federal statutory commands, not private-law analogies, govern.

In any event, the Trails Act provides that the "rights-of-way" for the Appalachian Trail "shall include lands protected for it" where "practicable."  16 U. S. C. §1244(a)(1); cf. §1246(d) (listing the "areas . . . included" in a right-of-way); §1246(e) (providing that the Government may "acquire such lands or interests therein to be utilized as segments of" a trail and that "lands involved in such rights-of-way should be acquired in fee").[9]  Thus, even with a so-called "easement" through a federal forest, the Park Service still administers land "acquire[d]" and "protected" for the Trail.[10]  That is why the Park Service refers to the Trail as

_____

[9] The Court maintains that these provisions are also "consistent with" its private-law paradigm, *ante*, at 9, but private law does not override the plain text of the relevant statutes.  See Part I–A, *supra*.  The Court simply works backwards from state law, even though statutory interpretation is supposed to start with statutory text.  See, *e.g.*, *Rotkiske* v. *Klemm*, 589 U. S. ___, ___ (2019) (slip op., at 4).  Indeed, the Court offers almost no analysis on the language of the General Authorities Act or the Park Service Organic Act.

[10] A right-of-way may include not just a right of passage, but also the land itself.  See, *e.g.*, 16 U. S. C. §521e(3) (providing that certain "rights-of-way" are "lands"); Black's Law Dictionary 1587 (11th ed. 2019) ("right-

a "swath of land," App. 97; why the Forest Service admits
that the Park Service administers those "acres," Forest Ser-
vice Land Plan 4–42; and why the Secretary of the Interior
has authority to grant rights-of-way "under" the Trail's sur-
face, §1248(a).

Tellingly, the Court recognizes that §1248(a) "extends a
positive grant of authority to the agency responsible for the
Trail." *Ante*, at 9, n. 3. Indeed. That only scratches the
surface. The Park Service may control what happens under
the Trail consistent with "units of the national park sys-
tem." §1246(i). The Park Service also determines which
"uses along the trail" to permit, §1246(c), and provides for
the Trail's "protection, management, development, and ad-
ministration," §1246(i). But under the Court's atextual
reading of the relevant statutes, the agency tasked with
protecting the Trail (and empowered to grant rights-of-way
under it) could be excluded from determining whether a
pipeline bores across the Trail. The Court's interpretation
means that the Mineral Leasing Act would not even stop
Atlantic from building a pipeline on top of an undisputed
unit of the Park System. Cf. *ante*, at 17, n. 7. That cannot
be right.

The Court also appears to assume that the Park Service's
administrative jurisdiction over lands making up the Appa-
lachian Trail must be mutually exclusive with the Forest
Service's jurisdiction. See *ante*, at 6–10 (focusing on
whether "jurisdiction over the lands" making up the Trail
was "transferred," "convert[ed]," or "divest[ed]"). But this

──────────

of-way" can refer to "[t]he strip of land"); Black's Law Dictionary 1489
(4th ed. 1968) (similar); see also *New Mexico* v. *United States Trust Co.*,
172 U. S. 171, 181–182 (1898) (discussing these two definitions and ex-
plaining that the "intention of the legislature" controls). Although the
Court quotes *New Mexico* for the proposition that a "'right of way'" can-
not constitute "'possession of the land itself,'" *ante*, at 10, n. 4, that pas-
sage had to do with a "*naked* right of way," *i.e.*, a simple right of passage.
172 U. S., at 184 (emphasis added).

14    UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

SOTOMAYOR, J., dissenting

is not a zero-sum inquiry.  The question is "not whether those portions of the [Appalachian Trail] were *removed* from the George Washington National Forest; the question is whether they were *added* to the National Park System." Brief for National Resources Defense Council et al. as *Amici Curiae* 2.  As explained above, the lands making up the Appalachian Trail were indeed added to the National Park System.

That the Trail may fall within both the Forest System and the Park System is not surprising.  The Trails Act recognizes that two agencies may have overlapping authority over the Appalachian Trail.  See 16 U. S. C. §1244(a)(1) (giving the Secretary of the Interior administrative authority "in consultation with the Secretary of Agriculture"); §1246(a)(2) ("Development and management of each segment of the National Trails System shall be designed to harmonize with and complement any established multiple-use plans for that specific area").  So too the Mineral Leasing Act contemplates that multiple agencies may share authority over federally owned land implicated in proposed rights-of-way.  See 30 U. S. C. §185(c); see also n. 2, *supra*. The Court appears to recognize this point, see *ante*, at 9, n. 3, but does not follow it to its logical conclusion: that land may be in both the Park Service and the Forest Service and thus excluded from the Mineral Leasing Act's right-of-way authority.  The Mineral Leasing Act's carve-out simply asks whether the federally owned land is in the Park System at all.  See §185(b).  If it is, then (as the parties recognize) the Mineral Leasing Act does not permit pipelines to cross that park land.

The Court also cites a 1983 amendment to the Trails Act for the proposition that the lands making up the Appalachian Trail are not administered by the Park Service.  See *ante*, at 17 (citing 16 U. S. C. §1246(a)(1)(A)).  This provision states that "nothing" in the Trails Act "shall be deemed

to transfer among Federal agencies any management re-sponsibilities . . . for federally administered lands which are components of the National Trails System." §1246(a)(1)(A); see also §207, 97 Stat. 45–46.  It does not aid the Court's analysis.

For one thing, §1246(a)(1)(A) undercuts the Court's dis-tinction between a trail and land: The statute equates "com-ponents of the National Trails System" like the Appala-chian Trail with "lands."    *Ibid.*; see also §1241(b) (Appalachian Trail is a "componen[t]" of the National Trails System).   For another, in relying on this provision, the Court elides two terms of art: "administering" land and "managing" it.  See *ante*, at 10–11, 17.  "Trail administra-tion is distinguished from on-the-ground trail manage-ment."   NPS, Reference Manual 45, at 21.[11]   Section 1246(a)(1)(A) itself differentiates the terms because it uses both, but disclaims only the transfer of "management," not "administration."  When, as here, "'"Congress includes par-ticular language in one section of a statute but omits it in another,"'" this Court "generally presumes" that "Congress '"intended a difference in meaning."'"  *Maine Community Health Options* v. *United States*, *ante*, at 16.

This distinction between administration and manage-ment tracks the Park Service Organic Act.  The Organic Act defines the Park System as land "administered" by the Park Service.  54 U. S. C. §100501; see also §100502 (reflecting

---

[11] The Park Service Reference Manual defines "Administration" as a term referencing the agency broadly "responsible for Federal funding and staffing necessary to operate the trail and exercising trailwide au-thorities from the [Trails Act] and [the administering agency's] own or-ganic legislation."  NPS, Reference Manual 45, at 8; see also *ibid.* ("Trail administration provides trailwide coordination and consistency").  "Man-agement," by contrast, refers to localized matters like "local visitor ser-vices," "law enforcement," "site-specific compliance," "site interpreta-tion," "trail maintenance" and "marking," "resource preservation and protection," and "viewshed protection."  *Id.*, at 10.

16      UNITED STATES FOREST SERVICE *v.* COWPASTURE
RIVER PRESERVATION ASSN.

SOTOMAYOR, J., dissenting

difference between administration and management).  Similarly, the rest of the Trails Act differentiates the two terms by giving the Secretary of the Interior (and by extension the Park Service) power to "administe[r]" the lands making up the Appalachian Trail, §5(a)(1), 82 Stat. 920, in consultation with other parties about proper Trail "management," §7(i), *id.*, at 925.  Even the Mineral Leasing Act echoes this difference by equating land "under the jurisdiction of [a] Federal agency" with land "administered" by that agency. 30 U. S. C. §§185(c)(1), (2).  The Court may be right that the Park Service "'*provide[s]* for' the maintenance of the Trail" while the Forest Service "*performs* the necessary physical work," *ante*, at 11, but that only punctuates the contrast between administration and management.  See, *e.g.*, NPS, Reference Manual 45, at 8, 10, 21.  There is no disputing that the Park Service administers the Appalachian Trail, even if the Forest Service manages it.[12]

At bottom, 16 U. S. C. §1246(a)(1)(A) does not change the fact that the Park Service administers the Appalachian Trail as a unit of the Park System.  Nor does it supersede the Park Service Organic Act's definition of Park System lands or the Mineral Leasing Act's exclusion of those lands.

B

Second, the Court maintains that Congress should have used "unequivocal and direct language" had it intended for the Trail to be land in the Park System.  *Ante*, at 12.  The Court cites the Wild and Scenic Rivers Act (Rivers Act) and the Blue Ridge Parkway statutes, noting that Congress "failed to enact similar language in the Trails Act."  *Ante*,

_____

[12] Mere months after Congress had enacted §1246(a)(1)(A) to clarify that it had not transferred "management responsibilities," the Park Service issued a final rule for "General Regulations for Areas Administered by the National Park Service," reaffirming that the Appalachian Trail was land in the Park System.  See 48 Fed. Reg. 30252.  That agency action makes little sense under the Court's view.

at 17. But as the Government explained, "[m]agic words such as 'transfer jurisdiction' are unnecessary." Reply Brief for Federal Petitioners 9 (citation omitted).

Indeed, neither example lends the Court much support. Certainly the Rivers Act, 82 Stat. 906, stated that any component of the Rivers System would "become a part of" the National Park System. §10(c), *id.*, at 916. But this shows that Congress has many means to make land a unit of the Park System. Congress charted another path for the Appalachian Trail by enacting the General Authorities Act, a statute just as explicit as the Rivers Act. Again, it was after the Park Service had become the Trail's "land administering bureau," 34 Fed. Reg. 14337, that Congress provided that "'any area of land . . . now or hereafter administered by the Secretary of the Interior through the National Park Service'" is land in the Park System, §2(b), 84 Stat. 826; see also 54 U. S. C. §§100102(2), (6), 100501. Resembling the Rivers Act, the General Authorities Act unambiguously provided that a component of the Trails System would become land in the National Park System.

The Blue Ridge Parkway statutes also undermine the Court's conclusion. The Court cites a 1952 statute and some more recent laws, see *ante*, at 12, but the enactments that originally created the Blue Ridge Parkway did not include language about "transferring" land from one agency to another. Rather, they stated that the parkway "shall be administered and maintained by the Secretary of the Interior through the National Park Service" and be "subject to" the Park Service Organic Act, even though the relevant lands included national forests. See 49 Stat. 2041; ch. 277, 54 Stat. 249–250; NPS, Blue Ridge Parkway: Virginia and North Carolina Final General Management Plan 12 (2013). The only salient difference between the original Blue Ridge Parkway statutes and the Trails Act is that, for the latter, Congress took an additional step by enacting the General Authorities Act.

For similar reasons, it is not significant that the National Trails Act allowed the Secretary of the Interior to decide which agency in the Interior Department would administer the Appalachian Trail.  Cf. *ante*, at 14–17.  That was a choice for Congress and the Executive Branch, not the Judiciary.  See §5(a), 82 Stat. 920.  More important, this designation had occurred before Congress enacted the General Authorities Act and amended the Mineral Leasing Act, and Congress was aware that the Park Service had already been selected to administer the land.  The Court is therefore incorrect to suggest that Congress altered a regulatory scheme "through delegation."  *Ante*, at 15.  Congress did so instead explicitly through legislation and ratification.

C

Last, the Court objects on policy grounds that hewing to the statutes' plain meaning would have "striking implications for federalism and private property rights."  *Ibid.*

Not so.  For starters, the pertinent provisions under the Mineral Leasing Act apply only to "lands owned by the United States."  30 U. S. C. §185(b)(1).  That statute does not address a State or private landowner's ability to grant rights-of-way for pipelines.  Congress, moreover, already addressed the Court's concerns.  The Trails Act prescribed the means by which nonfederal "land necessary for [the Trail] may be acquired": by voluntary arrangements or, if "all voluntary means for acquiring the property fail," through "condemnation proceedings."  *Preseault* v. *ICC*, 494 U. S. 1, 5, n. 1 (1990) (citing 16 U. S. C. §§1246(e), (g)).  "Where practicable," the Trails Act incorporated pre-existing cooperative agreements.  §1244(a)(1).  And as the Park Service has explained, it took the cooperative path to acquire private and state land for the Trail.  See, *e.g.*, NPS, Reference Manual 45, at 41 (extolling the Trail's cooperative agreements that became "a laboratory for developing

sustainable partnerships that can care for and protect interstate trails").

True, that the Appalachian Trail is land in the Park System means the Park Service has some power to regulate nonfederal property. But that authority is not new. For decades the Park Service has regulated waste disposal on "all lands and waters within the boundaries of all units of the National Park System, whether federally or nonfederally owned." 36 CFR §6.2 (1995). It also has power to regulate the entire Appalachian Trail, including lands that the Government does not own. 16 U. S. C. §1246(c) (requiring private landowners to act "in accordance with regulations" governing "the use of motorized vehicles" on the Trail).[13]

_____

[13] The Court predicts that "difficulties" would arise if the Trail were land in the Park System, asserting that the Park Service's "'administrative'" authority could allow the Government to "displace" state laws providing for Trail maintenance. *Ante*, at 16, n. 6. The Court's concerns do not follow. Even with the Supremacy Clause, U. S. Const., Art. VI, cl. 2, federal and state laws can (and do) coexist in this context and myriad others. See, *e.g.*, NPS, Reference Manual 45, at 8 (Park Service's "Trail administration provides trailwide coordination and consistency" among "government agencies, landowners, interest groups, and individuals"). The Court's core objection seems to be that the Park Service could "gain power over numerous tracts of privately owned and state-owned land." *Ante*, at 16, n. 6. But it already did. See 16 U. S. C. §1246(c); 54 U. S. C. §100751(a); Pub. L. 91–383, §§1, 2(b), 84 Stat. 825–826; 36 CFR §7.100; 67 Fed. Reg. 8479 (2002); 48 Fed. Reg. 30252; see also *Sturgeon* v. *Frost*, 587 U. S. ___, ___ (2019) (slip op., at 8). Despite that fact, none of the Court's supposed "difficulties" has arisen. Compare *ante*, at 16, n. 6, with, *e.g.*, NPS, Reference Manual 45, at 41 (explaining complementary "Federal, State, and nonprofit roles" in the Trail's successful "management"). Rather, as the Court points out, the Park Service has not fully exercised its authority, applying fewer regulations on private lands than on federal lands out of respect for private interests. 67 Fed. Reg. 8480. That the Park Service chooses not to regulate, however, does not mean it is powerless to do so.

In any case, the Court's policy objections do not bear on the statutory question here. And the Court's citations only confirm that the Trail is among the Park Service's "administered lands." *Id.*, at 8479. As those

Nor is the Park Service's authority over Trail lands remarkable. Uniform regulatory power is a feature of a unified National Park System. After all, Congress designed the Park System to "expres[s] a single national heritage" and to "conserve" the country's "scenery, natural and historic objects, and wild life" for "the common benefit of all the people of the United States." 54 U. S. C. §§100101(a), (b). Thus, "the Secretary [of the Interior], acting through the Director of the Park Service, has broad authority under the National Park Service Organic Act . . . to administer both lands and waters within all system units in the country." *Sturgeon* v. *Frost*, 587 U. S. ___, ___ (2019) (slip op., at 8); see also §100751(a) (Secretary of the Interior "shall prescribe such regulations as [he or she] considers necessary or proper for the use and management of System units"). Because "[t]hose statutory grants of power make no distinctions based on the ownership of either lands or waters," *id.*, at ___ (slip op., at 8), "park boundaries can encompass both federally and nonfederally owned lands and waters," all "subject to [Park] Service regulations," *id.*, at ___ (SOTOMAYOR, J., concurring) (slip op., at 3).[14]

Despite all this, the Court insists that Congress use "exceedingly clear language" when it wishes "to significantly alter the balance between federal and state power and the

--------

sources show, the Park Service's "general" regulations for lands "administered by the National Park Service" apply to Trail segments under the agency's "primary land management responsibility." 48 Fed. Reg. 30252–30253; see also *id.*, at 30253 (noting that because the Park Service "cannot abrogate [its] responsibility by excluding areas of the National Park System from coverage," it may also impose "special" regulations applicable to private lands). Those authorities thus reveal that administration differs from management, and that either way the Trail segment at issue is land in the Park System.

[14] If any Park Service regulations impair state or private-property rights, the Takings Clause and the Trails Act provide for compensation in appropriate cases. See U. S. Const., Amdt. 5; 16 U. S. C. §§1246(e), (g).

power of the Government over private property." *Ante*, at 15–16.  But Congress did.  It used language so clear, in fact, that every year the Park Service provides an acreage report listing state and private land as part of the Appalachian Trail system unit.  Last year, the Park Service's report listed that the Trail system unit comprises 58,110.94 acres of "Non-Federal" land, including 8,815.98 acres of "Private" land.  See NPS, 2019 Acreage Report.

\*    \*    \*

Today's outcome is inconsistent with the language of three statutes, longstanding agency practice, and common sense. The Park Service administers acres of land constituting the Appalachian Trail for scenic, historic, cultural, and recreational purposes.  §§3(b), 5(a)(1), 82 Stat. 919–920; 34 Fed. Reg. 14337.  "[A]ny area of land" so "administered" by the Park Service is a unit of and thus land in the National Park System. 54 U. S. C. §§100102(6), 100501.  The Mineral Leasing Act does not permit natural-gas pipelines across such federally owned lands.  30 U. S. C. §185(b).  Only Congress, not this Court, should change that mandate.

I respectfully dissent.