# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 8, 2009          Decided June 16, 2009

No. 08-5165

TERESA C. CHAMBERS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF THE INTERIOR,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-00380-JR)

*Paula Dinerstein* argued the cause for the appellant.

*Beverly M. Russell*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Teresa C. Chambers, former Chief of the United States Park Police, brought this action against the Department of the Interior (Interior) under the Privacy Act, 5 U.S.C. § 552a, alleging that

Interior violated the Privacy Act by (1) failing to provide her access to an appraisal of her job performance allegedly prepared by National Park Service (NPS) Deputy Director Donald W. Murphy in 2003 (Count I) and (2) failing to maintain and safeguard the appraisal (Count II).  The district court granted summary judgment in Interior's favor on Count I and dismissed Count II for failure to state a claim.  We reverse the summary judgment on Count I because the record, viewed most favorably to Chambers, presents a genuine issue of material fact regarding whether Interior intentionally destroyed the appraisal after Chambers requested access to it.  We similarly affirm the court's denial of summary judgment to Chambers on Count I based on the same triable issue of fact.  We affirm the court's dismissal of Count II because Chambers does not point to any adverse agency determination she experienced because of Interior's alleged failure to maintain the appraisal.

**I.**

On a motion for summary judgment, we view the facts in the light most favorable to the nonmoving party.  *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007).  So viewed, the record establishes the following facts.  On February 10, 2002, Chambers assumed her duties as Chief of the United States Park Police, a unit of NPS, which is in turn a bureau within Interior.  On September 22, 2003, Murphy, Chambers's supervisor, informed her by e-mail that he had prepared her performance appraisal and that his secretary would contact her to set up a meeting to review it; he also informed her in person that he had completed the appraisal, adding "Don't worry.  It's a good one."  Compl. ¶ 6, *Chambers v. Dep't of Interior*, No. 05CV00380 (D.D.C. Feb. 24, 2005) (Compl.); Second Affidavit of Teresa C. Chambers ¶¶ 6-7 (June 20, 2007), (Joint Appendix (JA) A174).  No meeting ever occurred.

On December 2, 2003, the Washington Post published an article quoting from an interview with Chambers in which she

expressed "concerns about budget limitations and the potential impacts on protection of national icons and persons visiting the parks." Compl. ¶ 8. The same day she expressed similar concerns in an e-mail to "a high-ranking" congressional staff member, the substance of which "was shared with [Chambers's] superiors, including Mr. Murphy." *Id*. ¶ 9.

On December 5, 2003, Chambers was placed on administrative leave. One week later, she was informed she could return to her duty post if she agreed to certain "stipulations," including that she obtain prior approval from Murphy or his designee before contacting the media or a member of the Congress or its staff. *Id*. ¶¶ 11-12. Chambers declined the reinstatement terms and on December 17, 2003, Murphy proposed that Chambers be removed from federal service. *Id*. ¶¶ 13-14.

On January 29, 2004, Chambers filed a complaint with the Office of Special Counsel (OSC) under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) (WPA). When the OSC failed to act on the complaint, she filed an appeal to the Merit Systems Protection Board (MSPB). On July 9, 2004, Interior issued a decision removing Chambers from federal service, which Chambers also appealed to the MSPB. The WPA claim remains before the MSPB.[1]

During his deposition in the MSPB appeal, Murphy testified that in late summer 2003, he prepared a written "narrative" "appraisal" of Chambers's performance over the previous fiscal year (2002-2003) which was "in final form." Dep. of Donald

---

[1]The MSPB affirmed an administrative law judge's decision upholding Chambers's removal and concluding that she had not made a protected disclosure under the WPA. On appeal, the Federal Circuit affirmed the MSPB's decision as to Chambers's removal but vacated and remanded the WPA claim. *See Chambers v. Dep't of Interior*, 515 F.3d 1362, 1371 (Fed. Cir. 2008).

W. Murphy at 18-20 (Aug. 11, 2004) (JA A34-36) (8/11/04 Murphy Dep.). He also noted then that Terrie Fajardo, retired NPS Chief of Human Resources, had seen the appraisal. *Id*. at 22-23 (JA A38-39). After she was "denied access" to the appraisal in the MSPB proceeding, Compl. ¶ 20, Chambers, through counsel, submitted a request pursuant to the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552, (FOIA) seeking the following documents:

1. A draft employee evaluation written by Deputy Director Donald Murphy concerning Chief Teresa Chambers during the time period covering 2002 and/or 2003.

2. All routings or transmittal documents indicating what officials received copies of the draft evaluation referred to in 1.

Letter from Richard Condit, General Counsel, Public Employees for Envt'l Responsibility, to Diane Cooke, FOIA Officer, NPS Headquarters (Oct. 26, 2004) (JA A43). In response to the request, Murphy searched his e-mails for the appraisal and instructed his assistant, Janice Brooks, to search his files. Brooks discovered "a draft performance plan" for Chambers entitled "Senior Executive Service Performance Plan" (SES Plan). Dep. of Donald W. Murphy, at 24-25 (Nov. 21, 2005) (11/21/05 Murphy Dep.); *see* Decl. of Diane Cooke ¶¶ 4-5 (June 15, 2007) (JA A163) (Cooke Decl.). The SES Plan, dated February 11, 2003, sets out various performance standards for Chambers to meet but contains no narrative appraisal of her performance. *See* SES Plan (JA A28-30). Brooks forwarded the SES Plan, along with a copy of Chambers's request, to Steve Krutz, an Employee Relations Specialist in NPS's Division of Labor and Employee Relations. Krutz "did not consider the SES Plan to be responsive" but nonetheless forwarded a copy to NPS FOIA Officer Diane Cooke. Cooke Decl. ¶¶ 5-6 (JA A163-64).

Interior's Office of the Solicitor also reviewed the SES Plan and determined it was not responsive to Chambers's request.

In a January 18, 2005 letter to Chambers's counsel, NPS stated it had searched its files and "did not find any documents responsive to [her] request." Letter from Alfred J. Poole III, Acting Associate Director, Administration, Business Practices, and Workforce Development, NPS, Department of Interior to Richard Condit at 1 (Jan. 18, 2005) (JA A46). In response, Chambers's counsel informed Cooke he found NPS's response to the document request "not credible" and attached an excerpt from Murphy's MSPB deposition describing the "narrative" appraisal he said he had prepared. Letter from Richard Condit at 1-2 (Jan. 26, 2005) (JA A48-49). In the letter and a follow-up e-mail, Chambers asked that NPS search further for the appraisal. Accordingly, Cooke asked Murphy to search his files again. Murphy responded to Cooke in a hand-written note that "the Performance Appraisal" he referred to in his MSPB deposition was "the same as the document already reviewed," meaning the non-narrative SES Plan. Note from Donald W. Murphy to Diane M. Cooke (rec'd Feb. 15, 2005) (JA A53) (Murphy Note); *see also* Decl. of Donald W. Murphy ¶ 3 (Apr. 13, 2005) (JA A59) (Murphy Decl.). He also characterized the document as a prospective appraisal plan to assess Chambers's performance in fiscal year 2003-04. *Id.* On March 14, 2005, NPS wrote Chambers that it had "found one document that [was] potentially responsive to [her] request," namely, the SES Plan, which was enclosed. Letter from Alfred J. Poole III to Richard Condit at 1 (Mar. 14, 2005) (JA A56).

Meanwhile, Chambers filed this action on February 24, 2005, asserting two claims: (1) Interior's "willful refusal to provide the records requested violates the Privacy Act," Compl. ¶ 35 (citing 5 U.S.C. § 552a(d)) (Count I); and (2) Interior "failed to establish and maintain physical safeguards to ensure the security and confidentiality of records in its possession in

violation of the Privacy Act and [Interior]'s regulations," *id*. ¶ 42 (citing 5 U.S.C. § 552a(e)(9), (10); 43 C.F.R. § 2.51) (Count II). Chambers asked that the court either (1) declare that Interior "violated the Privacy Act by withholding the requested records" and order Interior "to immediately make the requested records available to [Chambers]" or (2) declare that Interior "violated the Privacy Act by failing to safeguard records pertaining to [Chambers]" and award Chambers "damages for all lost income, benefits, and/or other adverse impacts." *Id*. ¶ 44. Chambers also requested that the court award her "all costs and attorneys' fees pursuant to 5 U.S.C. § 552a(g)(2)." *Id*.

After the suit was filed, Stephanie Yu, an Attorney-Advisor in Interior's Office of the Solicitor, contacted retired NPS Human Resources Chief Fajardo about the appraisal and Fajardo affirmed that she had created a performance appraisal of Chambers. Fajardo later testified that she and Murphy had prepared the appraisal together, she had given Chambers a "satisfactory" evaluation and she had delivered the "[f]inal" appraisal to Murphy "personally." Dep. of Terrie Fajardo at 20-22 (Oct. 7, 2005) (JA A69-71) (10/7/05 Fajardo Dep.). She also testified that she was "sure" she had retained a copy of the appraisal on her computer, describing the electronic file's likely location on the hard drive, *id*. at 27 (JA A76), that she believed she stored it on a floppy disk as was her normal practice, *id*. at 35-36 (JA A84-85), and that she had filed a hard copy inside a filing cabinet in her office, *id*. at 47 (JA A95). Yu met with Fajardo in August 2005 to search for the appraisal in NPS Human Resources records. Fajardo was provided a box of floppy disks in which she located one disk containing "a portion of the file" in which she "had done Ms. Chambers' performance appraisal." Dep. of Terrie Fajardo at 106 (Nov. 16, 2005) (JA A113) (11/16/05 Fajardo Dep.). The file she found, however, was only "part of a performance appraisal document," including

the "performance standards"[2] but not the "evaluation." 10/7/05 Fajardo Dep. at 10-11 (JA A63-64). According to Fajardo, a page was missing—"the part that was supposed to have been marked where the comments were, where the comments that [she] made that [she] discussed with Murphy—they weren't there." 11/16/05 Fajardo Dep. at 106 (JA A113). Fajardo was unable to search through her physical files at that time because "[t]he individuals who knew the current location of the files . . . were not in the office that day." Cooke Decl. ¶ 17. In addition, Fajardo's old computer was no longer available to search because it had been "prepared for surplus and disposal" and its "hard drive memory . . . erased in its entirety as part of this preparation" the previous month. Def.'s Resp. to Pl.'s First Req. for Prod. of Docs. and Things, *Chambers v. Dep't of Interior*, No. 05CV00380 (D.D.C. Feb. 24, 2005), at 4. On November 17, 2005, Yu and another Interior lawyer met at the NPS offices and searched through three filing cabinets to which, they were informed, Fajardo's files had been moved after her retirement. They found no file, either electronic or paper, that appeared to contain an appraisal of Chambers. Cooke Decl. ¶¶ 20-24. Finally, on September 8, 2006, Yu searched Murphy's files page by page but found no appraisal. *Id*. ¶ 25.

The district court granted Interior's motion to dismiss or, alternatively, for summary judgment. *Chambers v. U.S. Dep't of Interior*, 538 F. Supp. 2d 262 (D.D.C. 2008). The court granted summary judgment on Count I—for failure to provide access to Chambers's records under 5 U.S.C. § 552a(d)(1)—because it concluded Interior had conducted an adequate search for the missing appraisal. *Id*. at 267-68. The court dismissed Count II—for failure to establish rules and safeguards to maintain the

---

[2]Fajardo testified she and Murphy developed the standards together—he had "drafted and reviewed" them and she had prepared them "in final form." 10/7/05 Fajardo Dep. at 18.

security and confidentiality of Chambers's records—because it concluded that the Privacy Act does not provide a remedy for failure to retain agency records. *Id*. at 268-69.

Chambers then filed a timely notice of appeal.

**II.**

Chambers appeals both the district court's summary judgment on Count I and its dismissal of Count II. We address each count separately, reviewing *de novo* the district court's disposition of each. *See Islamic Am. Relief Agency*, 477 F.3d at 732.

### *A. Count I*

First, Chambers contests the summary judgment on Count I, which alleges that Interior "willful[ly] refus[ed] to timely provide the records requested." Compl. ¶ 35 (citing 5 U.S.C. § 552a(d)). We may affirm the summary judgment only if, "viewing all evidence in the light most favorable to [Chambers], 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' " *Islamic Am. Relief Agency*, 477 F.3d at 732 (quoting Fed. R. Civ. P. 56(c)). "At summary judgment, 'all inferences must be viewed in a light most favorable to the non-moving party.' " *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006) (quoting *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994)). Applying this standard, we conclude that the district court improperly granted summary judgment in Interior's favor.

In a suit seeking agency documents—whether under the Privacy Act or FOIA—" '[a]t the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.' " *Id*.

at 14 (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). The district court concluded that the Declaration of Diane Cooke, NPS FOIA and Privacy Act Officer, which "gives a detailed description of the numerous searches that [Interior] conducted," satisfied this standard. *Chambers*, 538 F. Supp. 2d at 267. The court reasoned:

> The search of Murphy's files was unquestionably sufficient. The Cooke declaration explains that these files were searched on three separate occasions, twice by Murphy and his secretary, and once by Ms. Yu.
>
> . . . The Cooke declaration explains that all presently existing systems of records which might reasonably have been expected to contain the performance evaluation have been searched, some of them numerous times.

*Id*. We agree with Chambers that the Cooke Declaration is not adequate under the Privacy Act because, if all reasonable evidentiary inferences are drawn in Chambers's favor, a reasonable jury could find that Interior intentionally destroyed the document—rendering the subsequent search ineffective—and there is therefore a genuine issue of material fact whether the search was adequate. *See Islamic Am. Relief Agency*, 477 F.3d at 732 (" 'A dispute over a material fact is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." ' " (quoting *McCready*, 465 F.3d at 7 (quoting *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005)))).

Generally, "an agency has no duty to retrieve and release documents it once possessed but that it *legitimately* disposed of *prior* to the date a FOIA request was received." *McGehee v. CIA*, 697 F.2d 1095, 1103 n.33 (D.C. Cir. 1983) (construing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 155 n.9 (1980)) (first emphasis added), *reh'g granted*

*and vacated in part in other respect*, 711 F.2d 1076 (D.C. Cir. 1983); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("If the agency is no longer in possession of the document, *for a reason that is not itself suspect*, then the agency is not improperly withholding that document . . . .") (emphasis added). Nonetheless, as the italicized language suggests—and as the Government acknowledged at oral argument, *Chambers v. U.S. Dep't of Interior*, No. 08-5165, Oral Argument Tr. at 18-20 (D.C. Cir. May 8, 2009) (Oral Argument Tr.)—an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act. *See Forsham v. Califano*, 587 F.2d 1128, 1136 n.19 (D.C. Cir. 1978) ("We do not suggest that mere physical possession of records by a government agency is the sole criterion for determining whether they fall within the scope of FOIA. Obviously a government agency cannot circumvent FOIA by transferring physical possession of its records to a warehouse or like bailee."), *aff'd, Forsham v. Harris*, 445 U.S. 169 (1980); *cf. Kissinger*, 445 U.S. at 155 n.9 ("There is no question that a [FOIA] 'withholding' must here be gauged by the time at which the request is made since there is no FOIA obligation to retain records prior to that request. . . . We need not decide whether this standard might be displaced in the event that it was shown that an agency official purposefully routed a document out of agency possession in order to circumvent a FOIA request."); *see, e.g.*, Judicial Watch, Inc. v. U.S. Dep't of Commerce, 34 F. Supp. 2d 28, 41 (D.D.C. 1998) (directing magistrate judge to preside over discovery "designed to explore the extent to which [Department of Commerce] . . . illegally destroyed and discarded responsive information, and possible methods for recovering whatever responsive information still exists outside of the DOC's possession"); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 62 (D.D.C. 2003) (noting that earlier in litigation court had held U.S. Environmental Protection Agency in contempt and ordered it to pay plaintiff's

11

costs and fees "caused by EPA's contumacious conduct," namely, destroying "potentially responsive material contained on hard drives and email backup tapes"). Thus, summary judgment is inappropriate, as the Government all but acknowledged,[3] if, viewing all inferences in a light most favorable to Chambers, a triable issue exists as to whether Murphy (or any one else at Interior) intentionally destroyed the appraisal Chambers requested. We conclude such a triable issue of fact exists.

_____

[3]The following colloquy occurred at oral argument:

Judge: . . . So, the government now agrees, the government agrees that if [the appraisal] was intentionally destroyed and they knew about it, then there would be a cause of action under the Privacy Act. So the question then is, was there a triable issue of fact on that question, correct?

Ms. Russell: No, Your Honor.

Judge: No?

Ms. Russell: There is no, there is no triable issue.

Judge: No, but isn't that the question, whether there was? Because this was summary judgment, right?

Ms. Russell: This, yes. This is summary judgment.

Judge: I mean, if a reasonable jury could have concluded from the evidence that there was intentional destruction of this document, then . . . summary judgment would have been inappropriate, correct?

Ms. Russell: But I don't think a reasonable judge, jury could conclude—

Oral Argument Tr. at 20-21. Shortly thereafter, the panel recharacterized this exchange: "Remember, a triable question about whether it was intentionally destroyed. That's the question you and I agreed is critical." *Id*. at 21. Government counsel did not demur.

The first time he was deposed, Murphy testified that in 2003 he had indeed prepared a "narrative" appraisal in "final form" of Chambers's past performance and that Fajardo had seen it. 8/11/04 Murphy Dep. at 18-20, 22-23. Fajardo too testified that the appraisal existed and that she had stored it, as she routinely did, on her computer's hard drive, on a floppy disk and, in hard copy, in a filing cabinet. 10/7/05 Fajardo Dep. at 27, 35-36, 47. Yet, Interior's response to Chambers's first document request, submitted on October 26, 2004, was limited to Murphy's own examination of his e-mails and his assistant's inspection of his files; no search was made of Fajardo's computer, floppy disks or filing cabinets, where, according to Fajardo's testimony, the appraisal was likely to be found. Then, after Chambers's second request in January 2005, Murphy recanted his earlier characterization of the 2003 document as a "narrative" "performance appraisal," asserting it was in fact the non-narrative SES Plan Brooks had found in his files to be used to measure Chambers's future performance. *See* Murphy Note (JA A53); Murphy Decl. ¶ 3 (JA A59). Further, notwithstanding Chambers requested the appraisal for a second time in January 2005, Interior failed to undertake a thorough search until August 2005—one month after Interior erased Fajardo's computer hard drive—at which time, according to Fajardo, the "evaluation" portion of the appraisal was missing from her floppy disk. When Interior finally searched Fajardo's paper files in November 2005, the hard copy Fajardo insisted she had filed was likewise missing. From this evidence, a jury could reasonably infer that Murphy and Fajardo did prepare a narrative appraisal in 2003, that Murphy subsequently misrepresented that the appraisal consisted only of the SES Plan and that the appraisal was thereafter intentionally removed from Murphy's computer and files and from Fajardo's computer hard drive, floppy disk and files before a thorough search for the appraisal was finally undertaken in August 2005. Thus, there is a genuine issue of material fact as to whether Interior (and in particular, Murphy)

intentionally destroyed the narrative appraisal identified by Fajardo (and initially by Murphy as well) and, consequently, as to whether Interior's search for the appraisal was adequate as well. As we explained above, Interior's search would not be adequate under the Privacy Act if Interior officials, aware of Chambers's document requests, deliberately destroyed her performance appraisal before completing the search in order to avoid providing the document to her. *See supra* pp. 10-11. Such a search would not be " 'reasonably calculated to uncover all relevant documents' "—which is what the Privacy Act, like FOIA, requires, *see Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995))—but instead would be designed to keep concealed the particular document that is most relevant. Accordingly, we reverse the district court's grant of summary judgment in Interior's favor. At the same time, we affirm the court's denial of Chambers's summary judgment motion because the same evidence, viewed in the light most favorable to Interior, reveals a triable issue of fact as to whether Interior intentionally destroyed documents or whether a narrative appraisal in fact ever existed.

### *B. Count II*

We next address Chambers's challenge to the district court's dismissal of Count II. "[A]ccept[ing] the complaint's factual allegations as true and giv[ing] [Chambers] the benefit of all inferences that can reasonably be drawn therefrom," we affirm the district court's dismissal for failure to state a claim because Chambers's complaint fails to " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Count II seeks to recover actual damages from Interior under section 552a(g) of the Privacy Act for "fail[ing] to establish and maintain physical safeguards to ensure the security and

confidentiality of records in its possession in violation of the Privacy Act and [Interior]'s regulations," alleging Interior's "refusal to properly safeguard records pertaining to [Chambers] has damaged [her] ability to successfully compete for positions in the federal government." Compl. ¶ 42-43 (citing 5 U.S.C. § 552a(e)(9), (10); 43 C.F.R. § 2.51).[4] Subsection (g)(4) of section 552a authorizes recovery of actual damages in an action brought under subsection (g)(1)(C) or (D) if "the court determines that the agency acted in a manner which was intentional or willful." By its terms, subsection (g)(1)(C) applies if, as alleged here, an agency fails to maintain a record accurately

---

[4]Section 552a(e)(9) and (10) imposes on each federal agency the duties to

> (9) establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance; [and]

> (10) establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained; . . . .

5 U.S.C. § 552a(e)(9)-(10). Regulation 2.51 recites the "Privacy Act require[ment] that records subject to the Act be maintained with appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity" and sets out in detail rules for physically maintaining records. 43 C.F.R. § 2.51.

and completely.[5]  To recover damages in an action under subsection (g)(1)(C), a plaintiff must establish four elements:

> (1) he has been aggrieved by an adverse determination; (2) the [agency] failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the [agency's] reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the [agency] acted intentionally or willfully in failing to maintain accurate records.

*Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996) (citing *Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 37 (D.C. Cir. 1987); *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990)).  Central to a cause of action under subsection

---

[5]Subsection (g)(1)(C) provides:

Whenever any agency

>     . . .

> (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual;

>     . . .

> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this Subsection.

5 U.S.C. § 552a(g)(1)(C).

(g)(1)(C) is the existence of an adverse agency determination resulting from inaccurate agency records. Yet Chambers does not even attempt to identify an adverse determination by a government agency that was caused by Interior's alleged failure to accurately maintain her records. Instead, she claims Interior's loss of her appraisal has had an "adverse effect" in that it has "hampered [her] in her ability to apply for jobs in the federal government by the lack of a performance appraisal." Chambers Br. 28; *see also* Reply Br. 20 ("Here, a Privacy Act record was destroyed, resulting in an adverse effect on Chambers' ability to seek employment and to seek reinstatement to her former position.").[6] Such an adverse effect, however, is not enough to make out a claim under subsection (g)(1)(C),which requires a specific "adverse determination" resulting from an agency's failure to maintain accurate records.[7] Because Chambers does

---

[6]In particular she asserts that when she reapplied for the position of U.S. Park Police Chief, she was "unable to provide the most recent performance evaluation that the application required," Chambers Br. at 28, but not that Interior or NPS took an adverse action against her—such as rejecting her application outright or refusing to hire her—because she lacked an accurate appraisal.

[7]Chambers now appears to pursue Count II solely under subsection (g)(1)(D), which authorizes a cause of action based on "adverse effect." *See* Reply Br. at 19-20 ("The Act specifically provides a damages remedy for violation of its provisions 'in such a way as to have an adverse effect on an individual.' " (quoting 5 U.S.C. § 552a(g)(1)(D), (g)(4))). In *Deters*, however, we held unequivocally that a plaintiff seeking damages for failure to maintain records "must sue under subsection (g)(1)(C) and not subsection (g)(1)(D)." *Deters*, 85 F.3d at 660. Chambers's exclusive remedy, if any, for failure to maintain records therefore lies, as it did in *Deters*, under section 552(g)(1)(C). Perhaps to avoid this result, Chambers casts her complaint as a violation of the duties imposed under section 552a(e)(9) and (10), *supra* note 4—to "establish rules of conduct" for

not point to any such agency determination, we affirm the district court's dismissal of Count II. *Cf. Hutchinson v. CIA*, 393 F.3d 226, 230 (D.C. Cir. 2005) (affirming dismissal of subsection (g)(1)(C) claim in part because "record fails to show proximate cause—a vital element of a section 552a(g)(1)(C) claim") (citing *Deters*, 85 F.3d at 657).

For the foregoing reasons, we affirm the district court's dismissal of Count II and reverse the summary judgment in favor of Interior on Count I, remanding for proceedings consistent with this opinion. In remanding, we note that, should Chambers prevail on Count I, the available remedies may be limited given that additional searches at this late date would likely prove futile. Nonetheless, she may be entitled at a minimum to "reasonable attorney fees and other litigation costs" pursuant to section 552(g)(2)(B).

*So ordered*.

---

maintaining records and "appropriate administrative, technical, and physical safeguards to insure [their] security and confidentiality"—rather than of the duty under section 552a(e)(5) to "maintain . . . records . . . as is reasonably necessary to assure fairness to the individual in the determination," which, as *Deters* explains, underlies a section 552a(e)(5) cause of action. Chambers has not identified any rule or safeguard, however, that Interior should have established but did not. *See* Oral Argument Tr. at 11 ("We're not alleging that they haven't established rules."); *see also* 43 C.F.R. § 2.51 (setting out detailed rules for physically maintaining records). To the contrary, at oral argument, Chambers's counsel acknowledged she is "alleging that in this case, the document *is not safeguarded* and *was not maintained*." Oral Argument Tr. at 11 (emphases added). The statutory duty to safeguard and maintain records arises solely under section 552a(e)(5).