# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 13, 2021     Decided December 17, 2021

No. 20-5028

NISKANEN CENTER,
APPELLANT

v.

FEDERAL ENERGY REGULATORY COMMISSION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00125)

*Megan C. Gibson* argued the cause for appellant. With her on the briefs were *Ciara Wren Malone* and *David Bookbinder*.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS and TATEL, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Concurring opinion by *Senior Circuit Judge* RANDOLPH.

TATEL, *Circuit Judge*: In this Freedom of Information Act case, a nonprofit seeks the names and addresses of property owners along the route of a proposed pipeline. Although the Federal Energy Regulatory Commission concluded that the property owners' privacy interests outweighed the public interest in this identifying information, it agreed to a more limited disclosure—the property owners' initials and street names. The district court found that FERC's proposal struck the proper balance between these competing interests. We agree.

## I.

Before building a pipeline, a natural-gas company must obtain a certificate that public convenience and necessity require it. 15 U.S.C. § 717f(c), (e). FERC may issue such a certificate only after notice to interested parties. 15 U.S.C. § 717f(c). Its regulations charge certificate applicants with providing this notice. 18 C.F.R. § 157.6(d). Certificate applicants must identify affected landowners, notify them by mail and publication, and submit lists of the landowners to FERC for its review. *Id.* Landowners wishing to oppose certification have a limited window of time to intervene in the administrative proceedings. Judicial review is available only following a timely rehearing petition by a party to the administrative proceedings. *See* 15 U.S.C. § 717r(a).

With a certificate of public convenience and necessity in hand, a pipeline company wields authority to seize private property by eminent domain. 15 U.S.C. § 717f(h). In practice, courts may award a certificate holder immediate possession before determining the compensation due to the property's owner. *See PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2253 (2021). Defective notice of a certificate application may thus leave property owners facing sudden and unexpected condemnation of their land with little recourse.

Niskanen Center is a nonprofit think tank that represents landowners affected by pipeline construction. In connection with its investigation into whether FERC was meeting its statutory notice obligations, Niskanen filed a FOIA request seeking landowner lists for the since-discontinued Atlantic Coast Pipeline project.

In response, FERC withheld the names and addresses of individual landowners under FOIA Exemption 6, which shields records if their disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). FERC concluded that releasing this information would "expose the landowners to an unwanted invasion of privacy" and that the balance of public and privacy interests "favors protecting the significant privacy interest of the landowners."

Niskanen sued to compel disclosure, and the parties each moved for summary judgment. During a conference on the motions, the district court attempted to steer the parties to compromise. To that end, it asked Niskanen's counsel to explain what the organization intended to do with the full names and addresses of affected landowners and why partial disclosure—for example, of only property owner initials and street names—would be inadequate for that purpose. Niskanen responded that it wanted to compare entries on the list with public records of landowners along the pipeline route to assess whether the pipeline company had notified the right people. But its only explanation for why it needed full names and addresses for that task was the possibility that a current landowner might share initials with the previous owner. When pressed by the district court, Niskanen accepted that this scenario would be, in the court's words, "pretty rare." Niskanen disclaimed any interest in contacting affected landowners. Hearing no reason Niskanen needed all it sought,

the court directed the parties to negotiate a more limited disclosure that would protect the landowners' privacy.

Negotiations failed. The parties informed the court that FERC had offered to provide initials and street names for individual landowners, but Niskanen insisted on full street addresses. The court granted summary judgment to FERC on the condition that it provide initials and street names as it proposed. *Niskanen Center v. FERC*, 436 F. Supp. 3d 206 (D.D.C. 2020). Full disclosure of landowner names and addresses, the court found, would do little to advance the public interest. Based on Niskanen's statements at the summary judgment hearing, the court found that street names and initials would be more than enough to allow Niskanen to compare the landowner lists to public records. The court concluded: "The proposed limited disclosure here is a just outcome, for it protects the privacy interests of thousands of affected landowners—by withholding additional personal information—without sacrificing the public's interest in disclosure." *Id.* at 214.

Unsatisfied, Niskanen appealed. "We review the district court's grant of summary judgment *de novo*." *Billington v. DOJ*, 233 F.3d 581, 584 (D.C. Cir. 2000). Though the parties spar fiercely over FERC's track record of notifying affected landowners, that dispute is far afield. The issue presented for our review is narrow: whether the incremental public interest in disclosing names and addresses of property owners along a pipeline route—rather than only their street names and initials—outweighs the incremental burden on their privacy.

## II.

FOIA seeks to "'open agency action to the light of public scrutiny'" by mandating disclosure of agency records unless subject to an enumerated statutory exemption. *ACLU v. DOJ*,

750 F.3d 927, 929 (D.C. Cir. 2014) (quoting *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).

To this end, Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The parties agree that the landowner lists qualify as "similar files" because they contain information that "applies to a particular individual." *Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). "To apply [E]xemption 6, a court must first determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest. If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (internal quotation marks and citations omitted). Once disclosed to a requester, records are publicly available, and so the court must consider the public interest and privacy ramifications of disclosure to the public at large. *National Association of Retired Federal Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("The statute requires that non-exempt files be disclosed to 'any person.' 5 U.S.C. § 552(a)(3). That is, information available to anyone is information available to everyone."). And, central to this case, the balancing inquiry focuses "not on the general public interest in the subject matter of the

FOIA request, but rather on the incremental value of the specific information being withheld." *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003).

The threshold requirement of a substantial privacy interest "is not very demanding." *Multi Ag Media LLC v. Department of Agriculture*, 515 F.3d 1224, 1230 (D.C. Cir. 2008). We have consistently found that the privacy interest in an individual's name and address surmounts this low bar. *See, e.g.*, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (names and addresses of individuals associated with abortion medication); *National Association of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002) (parcel numbers where pygmy owls were spotted); *Painting & Drywall Work Preservation Fund, Inc. v. Department of Housing & Urban Development*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) (names and addresses of construction contractors); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (names and addresses of employees eligible to vote); *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991) (names and addresses of third parties mentioned in witness interviews); *FLRA v. Department of Treasury*, 884 F.2d 1446, 1452 (D.C. Cir. 1989) (names and addresses of agency employees); *Horner*, 879 F.2d at 878 (names and addresses of retired employees). The Supreme Court has said the same. *See Department of Defense v. FLRA*, 510 U.S. 487, 501 (1994) ("it is clear that [civil service employees] have *some* nontrivial privacy interest in nondisclosure" of their addresses). "In the context of an individual residence, the court has recognized that 'the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant.'" *Norton*, 309 F.3d at 35 (quoting *Horner*, 879 F.2d at 875).

True, we have at times observed that "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed," and so we must consider "the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Horner*, 879 F.2d at 877. That said, we have found a significant privacy interest whenever the information sought was of a type that might invite unwanted intrusions, even absent evidence that such intrusions had occurred in the past. In *National Association of Retired Federal Employees v. Horner*, for example, we "assume[d]" that businesses would take the opportunity to market services to the retirees whose names and addresses were at issue. *Id.* at 878. In *Department of Defense v. FLRA*, the Supreme Court found a substantial privacy interest because "[m]any people simply do not want to be disturbed at home by work-related matters." *See FLRA*, 510 U.S. at 500–01. Even the possibility of wayward birdwatchers has nudged us past this threshold question. *See Norton*, 309 F.3d at 34–35 (noting "weak" evidence of trespassing by birdwatchers but nonetheless "[v]iewing the asserted privacy interests as involving more than minimal invasions of individual privacy"). The risk of unwanted contact or solicitation here is similar. And the landowners' privacy interests are more acute than in many Exemption 6 cases because they took no action to avail themselves of any government benefit but instead appear on FERC's lists by mere happenstance of geography.

Finding more than a minimal privacy interest, we turn to the public interest in disclosure, and in assessing this interest, we consider only the "incremental value" of the specific information withheld. *Schrecker*, 349 F.3d at 661.

The public obviously has a strong interest in whether FERC fulfills its statutory notice obligations. *See Reporters*

*Committee*, 489 U.S. at 773 ("Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose." (internal quotation marks omitted)). But to determine whether it does so, the public has no need for the personal identifying information of affected landowners. Indeed, Niskanen concedes that the redacted lists allow it and other members of the public to ascertain a great deal about what FERC and certificate applicants are up to. For example, it notes that it has been able to identify eighty-four landowners on the lists for whom the pipeline company was unable to find an address and so could not have provided notice by mail. At the same time, despite the district court's repeated prodding, Niskanen offered the court no cogent reason it needed the landowners' full names and addresses. The district court thus found that "initials and street names would be sufficient" to allow Niskanen to determine whether the pipeline company was notifying affected landowners. *Niskanen*, 436 F. Supp. 3d at 214. "The addition of the redacted identifying information would not shed any additional light on the Government's conduct of its obligation." *Department of State v. Ray*, 502 U.S. 164, 178 (1991).

As in other cases where the requesting party "failed to express" how redacted identifying information would advance public understanding, we agree with the district court that the privacy interests here outweigh the public interest in disclosure. *Carter v. Department of Commerce*, 830 F.2d 388, 391–92 & n.13 (D.C. Cir. 1987). Niskanen has given us no basis for disturbing the district court's conclusion that street names and initials would give it all it needs to evaluate FERC's conduct.

Niskanen also complains that portions of the redacted lists FERC produced following the district court's order are

illegible. At oral argument, FERC agreed to cooperate with Niskanen to correct these defects. If FERC fails to do so or if Niskanen believes the redacted lists otherwise depart from the district court's order, it may seek appropriate relief from that court.

## III.

Niskanen identifies a weighty public interest in understanding FERC's compliance with its notice obligations, but it articulates no reason it needs the full names and addresses of landowners along a pipeline route to do so. The district court rightly found that more limited disclosure best balanced landowners' privacy and the public interest. We affirm.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, concurring,

In June 2020 the Supreme Court decided a permit dispute in favor of the Atlantic Coast Pipeline, LLC. *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. ___, 140 S. Ct. 1837 (2020). A few weeks later, the pipeline owners canceled their project.[1]

The owners explained that a "series of legal challenges to the project's federal and state permits has caused significant project cost increases and timing delays." Press Release, *Dominion Energy & Duke Energy Cancel the Atlantic Coast Pipeline*, DUKE ENERGY (July 5, 2020). They added that their decision "reflects the increasing legal uncertainty that overhangs large-scale energy and industrial infrastructure development in the United States."

The majority opinion acknowledges the pipeline's demise but then says nothing more about it. My view is that the pipeline's cancellation has a significant impact on the Freedom of Information Act issue in this case.

Proposed in 2014, the pipeline was to be 604 miles long, "extending from West Virginia to North Carolina." *Cowpasture*, 590 U.S. at ___, 140 S. Ct. at 1841. In order to notify the many thousands of affected landowners along the route, Atlantic Coast Pipeline compiled a list of their names and addresses. The company delivered a copy to the Federal Energy Regulatory Commission during the early stages of the certification proceedings.

Exemption 6 of the Freedom of Information Act does not

---

[1] A subsidiary of Dominion Resources, LLC owns 48 percent of the Atlantic Coast Pipeline; one subsidiary of Duke Energy Corporation owns 40 percent; another subsidiary of Duke Energy owns 7 percent. *Atl. Coast Pipeline, LLC*, 161 FERC ¶ 61,042 (2017).

require a federal agency to disclose an individual's name and address if doing so "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As the majority opinion explains, FERC therefore would be obliged[2] to withhold the list from the Niskanen Center[3] if the landowners' privacy interests outweigh the public interest in disclosing the landowners' full names and addresses.[4] Maj. Op. 5.

The potential "privacy" involved here may be described as the landowners' "mental repose" and perhaps their "physical solitude." *See* Hyman Gross, *The Concept of Privacy*, 42 N.Y.U. L. REV. 34, 39 (1967).[5] That at least is how the district viewed the matter. The court thought that the affected landowners' privacy interest was "in not divulging that a

---

[2] The Privacy Act, 5 U.S.C. § 552a(b)(2), bars agencies from disclosing information about private individuals if FOIA does not require disclosure.

[3] The majority opinion states as fact that "Niskanen Center . . . represents landowners affected by pipeline construction." Maj. Op. 3. Niskanen so claimed in its Supreme Court amicus brief in the *Cowpasture* case. Brief of Amicus Curiae Niskanen Center in Support of Respondents at 1, *Cowpasture*, 590 U.S. ___, 140 S. Ct. 1837 (No. 18-1584). Its claim may have been strictly true but misleading. Of the many thousands of landowners along the 604-mile route of the proposed pipeline, Niskanen's lawyers represented one married couple who intervened in *Atlantic Coast Pipeline, LLC v. FERC* (D.C. Cir. Nov. 19, 2018) (No. 18-1224), *currently in abeyance*.

[4] In compliance with the district court's conditional grant of summary judgment, FERC published the landowners' initials, street names, and states of residency (but not their full names, house numbers, or towns).

[5] These were also the aspects of privacy at stake in the Exemption 6 names-and-addresses cases the majority opinion cites. Maj. Op. 6-7.

natural-gas pipeline crosses their property . . . to avoid potential protests on their land." *Niskanen Ctr. v. FERC*, 436 F. Supp. 3d 206, 214 (D.D.C. 2020). But this prospect is no longer a concern now that the pipeline owners have canceled the project.[6]

Even so, another privacy interest remains at stake. Many organizations were interested in the Atlantic Coast Pipeline.[7] Local, regional and national organizations opposing the pipeline would naturally take at least some credit for its cancellation.[8] In light of the pipeline owners' explanation, they would have a

---

[6] In *Bonner v. United States Department of State*, 928 F.2d 1148 (D.C. Cir. 1991), the court recognized that there are some FOIA cases in which it is "appropriate for a court to review the agency decision in light of post-decision changes in circumstances." *Id.* at 1153 n.10. This is such a case.

[7] An Appendix to FERC's final environmental impact statement for the Atlantic Coast Pipeline contains a distribution list of "Miscellaneous Individuals, Organizations, and Landowners." *See* OFF. OF ENERGY PROJECTS, FED. ENERGY REGUL. COMM'N, ATLANTIC COAST PIPELINE & SUPPLY HEADER PROJECT FINAL ENVIRONMENTAL IMPACT STATEMENT, vol. II, at A-33 (2017). The list contains some 7,000 entries, giving the name, town and state of the person or organization. Many of the organizations so listed were opposed to the pipeline. Some — including the Niskanen Center — filed amicus briefs in the Supreme Court *Cowpasture* case.

[8] Many organizations did just that upon the pipeline's cancellation. *E.g.*, ABRA Update #283, *DING, DONG, THE ACP!*, ALLEGHENY-BLUE RIDGE ALL. (July 10, 2020); Press Release, *SELC's Pipeline Team Reflects on the Path to Victory*, S. ENV'T LAW CTR. (July 9, 2020); Press Release, *BREAKING: Atlantic Coast Pipeline Cancelled*, SIERRA CLUB (July 5, 2020); *CANCELLED: Atlantic Coast Pipeline*, APPALACHIAN VOICES, https://appvoices.org/fracking/atlantic-coast-pipeline/ [https://perma.cc/GEE3-MUSN] (last visited Dec. 15, 2021).

point.

Those organizations touting their "good work" would have every incentive to use the landowner lists to solicit donations, by mail, by telephone or in person. In the face of comparable potential uses, the Supreme Court determined that individuals "have *some* nontrivial privacy interest in nondisclosure" of their home addresses. *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 501 (1994).[9] The Court also held that the individuals' privacy interest in their home addresses "does not dissolve simply because that information may be available to the public in some form," *id.* at 500, as the landowners' names and addresses certainly were.[10]

As to a countervailing public interest from organizations using the landowners' list in this manner, there is none. Fundraising by private organizations is not a public interest under Exemption 6. It is not a public interest because this activity reveals nothing about FERC's performance of its responsibilities. *See Bibles v. Oregon Nat. Desert Ass'n*, 519 U.S. 355, 355-56 (1997) (per curiam).

The only remaining plausible "public interest" is the one the

---

[9] The majority opinion, relying on circuit precedent, states that in an Exemption 6 case the court must first determine whether disclosure would compromise a substantial privacy interest and only then evaluate the public interest in disclosure. Maj. Op. 5. I do not believe this decisional sequence is a hard and fast rule. The Supreme Court in *Department of Defense*, 510 U.S. at 497, began its analysis with an assessment of the public interest and only then turned to an evaluation of the privacy interest, *id.* at 500.

[10] FERC's regulations required the pipeline to assemble its list of landowners from public tax records. 18 C.F.R. §§ 157.6(d)(2), 157.21(f)(3).

Niskanen Center has identified — comparing the pipeline's list with the public record of landowners who should have been notified of the impending pipeline project.  On this subject I agree with the majority opinion's analysis.

For the reasons mentioned above and in the majority opinion, I agree that the judgment of the district court should be affirmed.