# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 6, 2023        Decided February 16, 2024

No. 22-5330

INSIDER INC.,
APPELLANT

v.

GENERAL SERVICES ADMINISTRATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02653)

———

*Christopher Bix Bettwy* argued the cause and filed the briefs for appellant. *Matthew Topic* entered an appearance.

*Laura E. Myron*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Daniel Tenny*, Attorney.

Before: PILLARD and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*. Congress enacted the Freedom of Information Act ("FOIA") "to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 31-32 (D.C. Cir. 2002), and thereby to "achieve greater transparency in support of open government," *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 783 (D.C. Cir. 2018). In furtherance of that goal, the FOIA allows members of the public to request documents from federal agencies and requires agencies to produce those documents, subject to certain exceptions. *See* 5 U.S.C. § 552(a)(3).

In early 2021, the news organization Insider, Inc. ("Insider") submitted three FOIA requests for documents relating to President Trump's and Vice President Pence's outgoing transition teams. In response to Insider's FOIA requests, the United States General Services Administration ("GSA") produced several hundred pages of documents relating to its expenditures on President Trump's and Vice President Pence's outgoing transition teams. Among these documents were two excel spreadsheets listing the salaries of transition team members, one of which also included job titles, from which the GSA redacted several low-level team members' names. In support of its redactions, the GSA invoked FOIA Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Insider sued the GSA to compel production of the names, arguing that production is required by the FOIA. The district court held the redactions proper, and so it granted the GSA's motion for summary judgment and denied Insider's corresponding motion. We agree and accordingly affirm the district court's summary judgment order.

**I.**

In its FOIA requests, Insider sought: (1) "details about any expenditures made from outgoing President Donald Trump's Presidential Transition Account," (2) "all emailed communications between GSA and representatives of former President Donald Trump regarding expenditures from his Presidential Transition account at GSA," and (3) "all emailed communications between GSA and representatives of former Vice President Mike Pence regarding expenditures from his Presidential Transition account at GSA" along with "any available details of expenditures made from that account." GSA Br. 5.

In response to Insider's request, the GSA produced over three hundred documents, including two spreadsheets listing the estimated salary and benefits costs for twenty-eight members of the two transition teams. One of those spreadsheets also contained job titles. However, the GSA redacted the first and last names of nine of the team members listed on the spreadsheets, on the basis of FOIA Exemption 6. After Insider objected to the redactions, the GSA made two supplemental productions, in which it released the names of four more transition team employees. The GSA maintains that the five remaining names are protected from disclosure under Exemption 6 on the basis that "disclosure of the names would constitute a clearly unwarranted invasion of personal privacy" of "lower-level employees within [the offices of the former President and former Vice President]."

The GSA explains its process for determining which names to produce and which to withhold as follows. The GSA first considered whether the transition team members were public figures. The GSA produced the names of several transition team members whom it determined to be public

figures. For transition team members who were not public figures, the GSA evaluated whether those individuals nevertheless served in a sufficiently high-level role on the transition team such that the public interest in disclosure outweighed their privacy interests. To make this determination, the GSA considered the salaries and job titles listed on the spreadsheet. According to the GSA, a salary of $60,000 or less indicates a low-level (likely clerical or administrative) employee. In addition, job titles such as "Personal Aide" and "Administrative Assistant to the Former First Lady" indicates a low level of responsibility. The GSA produced the names of several high-level transition team members. Finally, the GSA evaluated whether any of the remaining individuals had voluntarily disclosed their involvement with the Trump transition team, such that their privacy interest in the release of their name was diminished. The GSA released the names of at least one transition team member based on such voluntary public disclosure. Because the GSA determined that five transition team members were not public figures, did not serve in high-level roles within the transition team, and had not voluntarily disclosed their involvement with the Trump or Pence campaigns, it redacted their names from the spreadsheets that it produced to Insider.

Insider brought the present lawsuit in district court, challenging the propriety of GSA's redaction. Both parties moved for summary judgment. The district court held that the GSA properly redacted the names of low-level transition team members from the salary spreadsheets. It granted the GSA's motion for summary judgment and denied Insider's. Insider appeals.

## II.

We review the district court's order on cross-motions for summary judgment *de novo*. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

The FOIA is structured around a presumption that agency documents should be subject to disclosure. *Nat'l Ass'n of Home Builders*, 309 F.3d at 32. It requires federal agencies, like the GSA, to produce, upon request, documents in their possession "unless the documents fall within one of nine enumerated exemptions." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). As relevant here, one of the enumerated exemptions is FOIA Exemption 6, which exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). We have held that "personnel . . . and similar files" under FOIA Exemption 6 includes "bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.3d 271, 278 (D.C. Cir. 2005)).

No party disputes the transition team members' names qualify as "personnel . . . and similar files." To determine whether the exemption applies, therefore, we must decide whether "disclosure of [the names] would constitute a clearly unwarranted invasion of personal privacy." *Id.* We apply a three-step process. *Id.* at 153. First, we ask whether the agency has shown a privacy interest in the information being withheld. *Id.* Second, if a privacy interest exists, we analyze whether the party seeking production has shown a public interest in the information. *Id.* Third, if both a privacy interest and public

interest exist, we must then determine if the privacy interest substantially outweighs the public interest. *Id.*

The first step is easily met here. Insider concedes that the transition team members whose names the GSA withheld have "a non-*de minimis* privacy interest" in the nondisclosure of their names. *See* Insider Br. at 12. As private citizens, the members of the transition team have a strong privacy interest in their personal information. *See Common Cause v. NRC*, 674 F.2d 921, 938 (D.C. Cir. 1982) (The FOIA "provides greater protection to private individuals, including applicants for federal grants and officials of regulated private companies . . . than to government officials with executive responsibilities."). That privacy interest is bolstered by the GSA's showing that a "significant privacy interest" in information that "might invite unwanted intrusions," *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021), exists here. As the GSA has shown, after it released the names of other transition team members, Insider contacted them and wrote news articles discussing them by name. Moreover, some GSA employees involved in the transition, and their families, were harassed by members of the public through email and phone communications. Thus, the transition team members have a substantial privacy interest in the continued confidentiality of their names.

Having identified a substantial privacy interest in non-disclosure, we turn to the second step and evaluate whether Insider has articulated a public interest in disclosure. It has not. The interests that Insider puts forth are not cognizable public interests under the FOIA, because they relate to the activities of private actors, the former executive officials on the transition teams, instead of the activities of the GSA or other government actors.

The FOIA requires the government to provide transparency about *its own* activities. *See Fed. Lab. Rels. Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*, 884 F.2d 1446, 1451 (D.C. Cir. 1989) ("[U]nder FOIA the disclosure interest must be measured in terms of its relation to FOIA's central purpose—to ensure that the *Government*'s activities be opened to the sharp eye of public scrutiny."). Thus, to be cognizable under the FOIA, a public interest must sound in activities that reveal information about the government itself; it cannot sound in activities exclusively concerning non-government actors. *Compare U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (noting that FBI criminal history records containing "information about private citizens . . . reveals little or nothing about an agency's own conduct," and thus holding that the public interest in those files was not cognizable under the FOIA) *with Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980) (holding that Exemption 6 does not protect names of non-government persons and institutions who had contracted with the CIA to undertake highly controversial research on the CIA's behalf). Nor can it sound in activities that concern only *former* government actors. *Cf. Behar v. U.S. Dep't of Homeland Sec.*, 39 F.4th 81, 85, 94 (2d Cir. 2022) (An incoming president was not a government actor for FOIA purposes.).

Insider fails to show a public interest in the activities of the government. Insider claims that it seeks information about "[w]ho . . . the country's most powerful executives entrust[ed] and work[ed] the closest with . . . in executing the somber duty of ensuring the peaceful transfer of power." Insider Br. at 18. It divides this asserted interest into two principal categories. First, Insider claims that knowing the names of the transition team members could "reveal possible ethical concerns" relating to the membership and activities of the transition teams. *Id.* at 14. Second, Insider claims that the names would

serve a derivative purpose, of "facilitat[ing] interviews with the media or other interested parties that would illuminate the transition process." Reply Br. at 9.

But these interests are not cognizable under the FOIA, because, as Insider acknowledges, the transition teams are not government entities, *see* Oral Argument 1:38-54, and Insider is unable to articulate how information about non-governmental entities like the transition teams would shed light on the activities of the government. Insider makes no attempt to connect its asserted public interests to its original request for information relating to the GSA's finances. And no connection is apparent. The GSA does not hire the transition team members, set the amount of their compensation, or control their job responsibilities. *See* 3 U.S.C. § 102 note (Presidential Transition Act § 3(a)(2), (5)). Insider also fails in its attempt to connect the transition team members to the GSA's activities by relaying 1) that they are hired before the President and Vice President leave office and 2) that they must be subject to an ethics plan in the Memorandum of Understanding ("MOU") between the transition teams and the GSA. Although the transition team members are chosen by the President and Vice President while still in office, they are chosen to carry out non-governmental roles. And while the GSA is required to enter into an ethics plan with incoming administrations, no such requirement applies to outgoing administrations. *See* 3 U.S.C. § 102 note (Presidential Transition Act § 4(g)). Moreover, with respect to incoming administrations, the GSA has no control over the content of the ethics plan in its MOU or power to enforce it. *Id.* Thus, if Insider uncovered ethical violations in the way that transition team members were hired or how they carried out their job responsibilities, that information would still not show what the government is up to.

Additionally, even if information about the transition teams could shed light on the GSA's activities, Insider has not explained how knowing the names of low-level transition team members would do so. The GSA produced hundreds of pages of financial information regarding its expenditures on the transition, including the transition team members' job titles, salaries, and benefits information. The relevant question before us is therefore whether, "given the information already disclosed by [GSA], the incremental value served by disclosing [a transition staffer's] name outweighs that person's privacy interest." *American Immigration Lawyers v. Executive Office for Immigration Review*, 830 F.3d 667, 674 (D.C. Cir. 2016) (internal quotation marks omitted). We conclude it does not.

Nor does Insider successfully articulate a public interest in derivative uses of the information it seeks. According to Insider, learning the identities of the transition team members will allow it to contact those individuals as part of its investigation, and through those conversations, learn of possible government misconduct. Oral Argument 3:10-50. The individuals on the transition team, it argues, may have information regarding interactions between the outgoing administration and FOIA-covered agencies, such as whether confidential documents were properly returned to the National Archives. Oral Argument 2:27-40. Insider fails to articulate a cognizable public interest, however, because its argument is purely speculative. While the Supreme Court has left open the possibility that derivative uses could amount to a public interest under some circumstances, it has suggested that the derivative information sought must be more than speculative. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) ("Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy."). Recognizing a public interest in the name of any individual who *might* know about government wrongdoing would create an exception that

swallows the rule. And Insider does not articulate a non-speculative basis to conclude that the transition team members would lead it to information regarding *government* misconduct. Insider's reference to "media coverage expressing ethical concerns about the members of former President Trump's 2016 transition team," Insider Br. at 15, for example, suggests concerns about the former President and Vice President's activities—not those of the GSA.

Finally, the GSA's production of some high-level transition team members' names has not waived the privacy interests of low-level transition team members. When evaluating whether it may withhold each piece of information, the GSA must first consider whether any privacy interest exists in the information. If it determines that there is no privacy interest in the information, for example, because the person it pertains to is a public figure or has already publicly disclosed the information, then the GSA must disclose that information, and it need not reach the second step of determining whether there is a public interest in the information. Thus, the GSA's determination that some individuals waived their privacy interest says nothing about whether a public interest exists in that information. And even if the GSA itself thought the names of high-level team members was a matter of public interest under the FOIA, we conclude that any such interest is overcome here by the private interests involved.

Where Insider has not identified a public interest cognizable under the FOIA, its arguments about the "fraught" Trump Administration transition, including concerns about whether a "peaceful transition would be accomplished," Insider Br. at 4, make no difference. Even a very high level of public concern about the activities of non-government actors (or former government actors) cannot bring those activities within the scope of the FOIA.

11

*****

For the foregoing reasons, we affirm.

*So ordered.*